WILLIAM A. DURAND AND WIFE vs. THE NEW HAVEN & NORTHAMPTON COMPANY.

A railroad company was required by its charter to so locate its road that in its construction and use it should not interfere with a certain turnpike so as to endanger travel upon it; and the charter provided for the appointment of a committee who should determine and certify whether it had done so. In a suit against the company for an injury to a person traveling on the turnpike, the declaration alleged that the defendants had not constructed their road in the manner so required, and the defendants set up in their plea the approval of the committee appointed under their charter. To this the plaintiff replied that the approval was obtained by fraud. To this replication the defendants demurred specially, on the ground that it was not averred in what the fraud consisted. Held that the replication was sufficient.

More general averments are allowed in a replication than in a declaration.

And held that the inference from the fact of the fraud that the approval of the committee was void, was one that the court could reasonably make, though not a necessary legal conclusion.

The court below, having overruled the demurrer, proceeded to a hearing in damages, and held that the defendants had admitted by their demurrer that the approval of the committee was obtained by fraud, and that, upon this admission, and the finding that they had not constructed their road in the manner required by their charter with reference to the safety of travel on the turnpike, they were liable to substantial and not mere nominal damages. Held to be no error.

The charter of the railroad company, which required only such construction of

the road with reference to the safety of travel upon the turnpike as should be approved by the committee, was open to amendment by the General Assembly. Held that a general statute requiring all railroad companies to maintain fences along their roads where running within the limits of any highway, was an amendment of the charter.

TRESPASS on the case for an injury to Maria L. Durand, one of the plaintiffs, by the negligent acts of the defendants, a railroad company, in the running of a train upon their road; brought to the Superior Court in New Haven County.

There were four counts in the declaration, the second of which was as follows :—

That the defendants were duly incorporated as a railroad company, as in the first count set forth, and were duly authorized by their act of incorporation and amendments thereto, to construct and operate a steam railroad from New Haven to Farmington, and through the intermediate town of Hamden, in New Haven County, and the defendants had constructed and were operating said railroad, and especially through said town of Hamden, at the time of and long before the commission of the grievances hereinafter set forth. And the plaintiffs say that in the defendants' said act of incorporation it was provided, among other things, " that said railway shall be so located that in the construction, completion, use and occupation thereof it shall not in any way interfere with the turnpike road of the Cheshire Turnpike Company, so as to obstruct, impede or endanger the safety of the public in traveling thereon." And the plaintiffs say that the defendants, unmindful of the obligations of their charter, and in defiance thereof, improperly and unlawfully constructed their railroad in, upon and along the Cheshire turnpike road for a space of about three miles in the town of Hamden, between the defendants' station at Centerville and Mount Carmel on their said railroad, and in such manner as necessarily to obstruct, impede and endanger the safety of the public in traveling thereon. And the plaintiffs say that, on the 17th day of July, 1871, they were riding along said turnpike road, in said town of Hamden and between said railroad stations, in a wagon with a horse attached, and in the exercise of all due and reason-

able care; that the defendants then and there improperly, negligently and carelessly drove and directed a locomotive engine and a long train of cars attached over, upon and along their railroad, so unlawfully constructed as aforesaid over, upon and along said turnpike road, upon which the plaintiffs were then traveling, so that said locomotive engine and said train of cars approached within a few feet of the plaintiffs, and thereby greatly frightened the plaintiffs' horse attached to said wagon, so that they were carried out of the traveled track of said turnpike road and upset and thrown out of said wagon upon the ground with great force and violence, whereby the said Maria L. Durand received the injuries set forth in the first count of this declaration, so that through the carelessness and negligence of the defendants and the unlawful construction of said railroad by the defendants in the manner aforesaid, and for want of due care and attention in so constructing said railroad as not to impede, obstruct and endanger the public traveling upon said turnpike, the said Maria L. Durand, in the exercise of due and reasonable care aforesaid, was injured as aforesaid.

The third count charged the defendants with negligence generally, in so running their train as to frighten the horse of the plaintiffs and cause the injury alleged. The first and fourth counts are not important, as no recovery was had upon them.

To the second count the defendants pleaded as follows, and demurred to all the other counts.

That the plaintiffs ought not to have or maintain their action against the defendants by reason of anything in the second count of the plaintiffs' declaration contained, because they say, that although true it is, as in said count alleged, that the defendants were duly incorporated as therein alleged, and were duly authorized by their act of incorporation and amendments thereto to construct and operate a steam railroad from New Haven to Farmington, through the intermediate town of Hamden; and that in the defendants' said act of incorporation it was provided that said railway should be so located that in the construction, use and occupation thereof,

it should not in any way interfere with the turnpike road of
the Cheshire Turnpike Company, so as to impede or endanger
the safety of the public in traveling thereon; yet the defend-
ants aver that it was also provided in said act of incorporation
and immediately following the provision aforesaid, that said
corporation might apply to any judge of the Superior Court,
who might by law judge between the parties, who, after
notice given, might appoint three disinterested persons to
determine whether said corporation had complied with the
provisions aforesaid, and, if approved by them, their decision
should be final.   And the defendants aver that, in pursuance
of their said act of incorporation, they proceeded to locate
their said railroad from New Haven to Farmington, and
through said town of Hamden in its present locality, as
designated by the directors of the corporation, and approved
by the commissioners appointed by the General Assembly;
and thereupon, on the 15th day of March, 1847, the defend-
ants applied to the Honorable William L. Storrs, one of the
then judges of the Superior Court of the state, and qualified
by law to judge between the parties, who, after due notice
given to the said Cheshire Turnpike Company, on the 25th day
of June, 1847, appointed Holbrook Curtis, Henry D. Smith,
and Ira Hadsell, three disinterested persons, to determine
whether the defendants had complied with the aforesaid pro-
visions of their act of incorporation; and said committee
thereupon proceeded to discharge the duties of their said ap-
pointment, namely to determine whether the defendants had
complied with the provisions of their charter as aforesaid, and
had so located their said railroad as that, in the construction,
completion, use and occupation thereof, it would in no way
interfere with the turnpike road of said Cheshire Turnpike
Company, so as to obstruct, impede or endanger the safety of
the public in traveling thereon; and said committee, having
carefully examined the said railroad, as located and con-
structed by the defendants from Hillhouse Avenue, in said
town of New Haven, to the town of Cheshire, and to a
point in said town of Cheshire known as Beachport, and
having fully heard the Cheshire Turnpike Company regarding

the same, were of opinion, and on the 25th day of October, 1847, under their hands, and by a certificate in writing, duly signed by them, and bearing date the said 25th day of October, did find and decide " that the said New Haven & Northampton Company have so located their said railroad, as that in the construction, completion, use and occupation thereof, it will not in any way interfere with the turnpike road of said turnpike company, so as to obstruct, impede or endanger the safety of the public in traveling thereon," and that the said New Haven & Northampton Company had fully complied with the provisions of said act of incorporation, hereinbefore set forth, and approved of the aforesaid location and construction of said railroad of the defendants through said town of Hamden, in its relation to the turnpike of said Cheshire Turnpike Company, including that portion of said railroad, and of said turnpike where the said Maria L. Durand received the alleged injuries in the second count of the plaintiffs' declaration set forth, all which the defendants are ready to verify; wherefore they pray judgment, &c.

The plaintiffs replied to this plea as follows :—

And the plaintiffs, as to the said plea of the defendants by them above pleaded to the second count of the said declaration, say, that they, the plaintiffs, by reason of anything by the defendants in that plea alleged, ought not to be debarred from having and maintaining their aforesaid action thereof against them, the defendants, because they say that the said supposed certificate or decision of the said committee, as set forth in the said plea, was had and obtained from the said committee by the fraud and covin of the defendants, to wit, at, &c.; and this the plaintiffs are ready to verify; wherefore they pray judgment, &c.

To this replication the defendants demurred specially, assigning as causes of demurrer " that it is not alleged in said replication what acts of the defendants, or of any officer or agent of theirs, done or authorized to be done, constitute the supposed fraud or covin of which they are therein alleged to have been guilty in obtaining said certificate and decision from said committee; nor is it alleged in said replication

wherein said supposed fraud or covin consisted, or by whom, or when, or where, or upon whom, the same was practiced; and also that said replication is in other respects uncertain, informal or insufficient, and this they are ready to verify; wherefore by reason of the insufficiency of said replication in their behalf, the defendants pray judgment, if the plaintiffs ought to have or maintain their aforesaid action against them." '

The court (*Beardsley, J.,*) overruled all the demurrers, and on a hearing in damages made the following finding of facts.

On the 17th day of July, 1871, about five o'clock in the afternoon, the plaintiff, Mrs. Maria L. Durand, in company with her husband, who was driving a single horse, was traveling toward the north upon a public highway in the town of Hamden, which had formerly been known as the Cheshire Turnpike. The railroad of the defendants at the *locus in quo,* and for a distance of about eight hundred feet southerly, and two thousand feet northerly, is located and constructed in close proximity to the highway westerly thereof, and within the original limits of such highway, and with such a curve in relation thereto that to persons traveling thereon from the south, a train approaching from the north has the appearance of coming directly upon them. There is no fence or screen separating the highway from the railroad. The view up the railroad to a person going north was, at the time when Mrs. Durand was injured, materially intercepted, and the line of sight shortened, by bushes growing on the easterly embankment of the railroad. The horse Mr. Durand was driving became frightened at a freight train which was coming from the north at the usual rate of speed, and ran a short distance, sheering out of the traveled track of the highway towards and upon its easterly sloping bank, whereby the carriage was overturned and the injury to Mrs. Durand sustained.

I find that the railroad of the defendants is at this point so located and constructed relatively to the highway, that the running of trains thereon at the usual rate of speed of this railroad, which is about twenty miles per hour at this point, and with the use of its customary signal, which is to ring a

bell on the engine when the train is thirty or forty rods above said point of highway, and not visible from said point, endangers the safety of travelers riding or driving upon the highway, by frightening their horses, to such an extent that it is very dangerous to travel over such part of the highway with a horse of average gentleness, and that the defendants were guilty of negligence in not adopting some further precaution to guard against such danger. I do not find what particular additional precaution they should have adopted; whether slacking of speed, or ringing of the bell, or both, or some other.

Neither of the plaintiffs contributed by his or her negligence to the receiving of the injuries by Mrs. Durand. The allegations set forth in the defendants' plea to the second count of the declaration are found to be true.

Upon these facts, I find as a conclusion of law:

First. That the plaintiffs are not entitled to recover upon the first or fourth count of the declaration.

Second. That the defendants' demurrer to the plaintiffs' replication to the plea, under the second count, admits, because it does not deny, that the judgment of the commission was obtained by the fraud and covin of the defendants.

Third. Upon this record admission and the foregoing finding of facts, I find that the company have failed to comply with the terms of their charter, and that the plaintiffs are entitled under the second and third counts to substantial damages.

Damages are assessed under the second and third counts at six thousand dollars.

The defendants moved for a new trial for error of the court in assessing substantial instead of merely nominal damages. They also filed a motion in error, assigning as error the overruling of the demurrers to the first, third and fourth counts, and of the demurrer to the plaintiffs' replication to the plea to the second count, stating further errors as follows:

Fifth. That the court erred in ruling that the defendants' demurrer to the plaintiffs' replication to the defendants' plea to the second count of the plaintiffs' declaration admitted that

the judgment of said committee was obtained by the fraud and covin of the defendants, and in ruling that such admission from the facts found was an admission that the defendants had failed to comply with their charter in the location and construction of said road.

Sixth. That the court erred in adjudging that the plaintiff was entitled to substantial instead of only nominal damages.

*J. S. Beach* and *W. C. Case*, in support of the motions.

1. The replication to the defendants' plea to the second count is insufficient by reason of the vague, uncertain and general character of its vital allegation, to wit, that the certificate in question was obtained by the fraud and covin of the defendants. 3 Chitty Pl., 962, and note; *Connop* v. *Holmes*, Tyrw. & Grang., 87; *Slack* v. *McLagan*, 15 Ill., 242; *Abraham* v. *Gray*, 14 Ark., 301. It is the office of pleading to apprise the opposite party of the exact *facts* relied on. Here no facts are stated, and no sufficient information is therefore given to enable the defendants to present a good defense, if they have one. The replication is also defective in not alleging that the certificate in question is void by reason of the fraud. Fraud does not necessarily avoid a judgment. Freeman on Judgments, §§ 334, 335, 336; 2 Phill. Ev., 95, and note; *Simms* v. *Slocum*, 3 Cranch, 307; *Ammidon* v. *Smith*, 1 Wheat., 447, 460; *Smith* v. *Quinton*, Brayt., 200; *Bean* v. *Smith*, 2 Mason, 252.

2. The record shows no case of legal negligence against the defendants. At most the injury complained of was a consequential injury resulting from the defendants' use of their railroad in the way authorized by their charter; an injury therefore for which the defendants are not liable. *Burroughs* v. *Housatonic R. R. Co.*, 15 Conn., 124; *Burton* v. *Phil., Wil. & Balt. R. R. Co.*, 4 Harr., 252; *Coy* v. *Utica & Schenectady R. R. Co.*, 23 Barb., 643; *Beisiegel* v. *N. York Central R. R. Co.*, 40 N. York, 9; *Rex* v. *Pease*, 4 Barn. & Adol., 30.

3. The court erred in holding that the demurrer to the plaintiffs' replication to the defendants' plea to the second

count was such an admission of facts as warranted the assessing of substantial damages. The defendants upon the hearing in damages proved the allegations of their plea. The plaintiffs did not prove the allegations of their replication. The court held that the demurrer was a record admission that the approval was procured by fraud, and that the defendants were entitled to recover all the damages they had sustained by the defendants running their cars upon rails unlawfully laid and so frightening the plaintiff's horse, whether they had been guilty of negligence or not. This was clearly error. A demurrer admits nothing so far as regards the ultimate rights of the parties. It presents to the court an enquiry into the legal sufficiency of the pleadings. If sustained the controversy is ended. If overruled, the defendant may plead over, or he may fold his hands and await judgment. If he does the latter the plaintiff may take judgment. And why? Because, as Judge Butler clearly puts it in *Lamphear* v. *Buckingham*, 33 Conn., 248, "it is the conclusion that naturally and regularly follows from the premises of law and fact, which stand thus: against him who hath rode over my corn I may recover damages by law; but *A* hath rode over my corn; therefore I shall recover damages against *A*. Usually the major premise is not set out in the declaration, but the proposition claimed is implied from, or involved in, the facts stated." The plaintiff can say, "The court has adjudged my major premise, 'against him who hath ridden over my corn I may recover damages,' to be legally sufficient; the defendant sitting over there with folded hands does not deny the minor premise; I want judgment." He is entitled to it, but for how much? The plaintiff concedes that the defendant rode very carefully between the rows, and says he is satisfied with nominal damages. The defendant must still keep his hands folded. The controversy is ended. But suppose the plaintiff says the defendant rode furiously over the lot, and that he wants $100 damages. Now the defendant unfolds his hands and has a standing in court to say to the plaintiff, "You must prove your damage to be $100 before taking judgment for that sum." The hearing begins. The plaintiff proves that on a certain night *somebody*

rode over his corn and injured it to the extent claimed. Can he stop? Has the defendant admitted that *he* did the injury? The plaintiff goes further and calls a witness who saw the defendant do it, recognised him in the moon-light by the color of the horse and the peculiarity of his hat. The defendant in reply puts the plaintiff on the stand and extorts from him the admission that it was he himself who rode the defendant's horse and wore his hat and did the injury. Has the defendant made a record admission which supersedes the sworn avowal? The judgment must still be for the plaintiff, but for only nominal damages. If the defendant proves a written admission by the plaintiff of the same facts, the result will be the same. But suppose the defendant on the hearing admits that he did the mischief, and produces a certificate of the plaintiff that the damage did not exceed $5, and a release of all claim over that sum, or a release in full. The plaintiff may reply to all this and insist that the documents are forgeries, or procured by fraud or duress. It matters not at what stage of the proceedings the defendant stops and folds his hands, whether after a demurrer overruled to a declaration, or a replication. He defaults; *nihil dicit.* The plaintiff can assume to be true all allegations which entitle him to a judgment. His damages may have been already measured by law, or by contract; if not, he must take his judgment for nominal damages unless he proves his right to larger damages. The demurrer may shift the order and burden of proof upon such hearing, but any fact which, if true, reduces the plaintiff's claim to nominal damages, is a legitimate topic of enquiry, and the issue cannot be concluded by any supposed record admission.

*Wright* and *Doolittle*, contra.

1. The replication demurred to was sufficient, and the demurrer was properly overruled. It was copied from the form in 2 Chitty Pl., 1184. See also 1 Archb. N. P., 94, 218; 2 id., 236. The rule which is applicable to declarations is not applicable to pleas and replications. "A general plea that a deed has been obtained by the plaintiff by fraud and misrep-

resentation has been holden sufficient, on the ground that
fraud usually consists of a multiplicity of circumstances, and
therefore it might be inconvenient to require them to be par-
ticularly set forth." 1 Chitty Pl., 537. So in a replication.
Chitty (Pl., 582,) says it is unnecessary and injudicious to
state the particulars of the fraud. The English authorities
abundantly sustain such generality of pleading in such a case.
Year Book, 33 H. 6th, 5; Plowd. Com., 38; *Fresham's case*,
9 Coke R., 110; *Knight* v. *Peachy*, T. Raym., 303; *Anon.*,
1 Ventris, 329; *Anon.*, id., 331; *Barrett* v. *Johnson*, 2 T.
Jones, 197; *Hill* v. *Montagu*, 2 Maule & Selw., 377, 8;
*McCreight* v. *Stevens*, 1 Hurlst. & Colt., 454; *Daniels* v.
*Coombe*, 2 Scott N. R., 597; *Green* v. *Gosden*, 4 id., 13;
*Stone* v. *Compton*, 6 Scott Cas., 846; *Connop* v. *Levy*, 11 Q.
B., 769; *D'Aranda* v. *Houston*, 6 Car. & P., 511; *Stevens* v.
*Webb*, 7 id., 60; *Homfray* v. *Rigby*, 5 Maule & Selw., 60.
And the American authorities agree with the English. *Dorr*
v. *Munsell*, 13 Johns., 430; *Sherwood* v. *Johnson*, 1 Wend.,
443; *Pence* v. *Smock*, 2 Blackf., 316; *Mason* v. *Evans*, Coxe,
182; *Pemberton* v. *Staples*, 6 Misso., 59; *Edgell* v. *Sigerson*,
20 id., 495; *Fox* v. *Webster*, 46 id., 181; *Stoever* v. *Weir*, 10
Serg. & R., 25; *Whitehead* v. *Root*, 2 Metc. (Ky.), 584; *Hoit*
v. *Holcomb*, 3 Fost., 535; *Webb* v. *Steele*, 13 N. Hamp., 231;
*Hewett* v. *Bronaugh*, 3 Dana, 459.

2. The court ruled correctly with regard to the effect of
the demurrer to the replication. It admitted the facts prop-
erly alleged, and of course admitted that the certificate of the
committee was obtained by fraud, which was the fact specially
set up in the replication. *Havens* v. *Hartford & N. Haven
R. R. Co.*, 28 Conn., 69; *Lamphear* v. *Buckingham*, 33 id.,
238; *Daniels* v. *Town of Saybrook*, 34 id., 377. And upon
the admissions of this demurrer the court properly held the
defendants liable for the actual damages sustained. They
offered no evidence, for the purpose of reducing damages, to
prove that they were not guilty of fraud in procuring the
approval of the committee. The existence of the fraud ren-
dered the approval of the committee of no effect, and the
court, upon the hearing in damages, found that the road was

so located within the original limits of the highway that its operation "endangered the safety of travelers riding or driving upon the highway by frightening their horses, to such an extent that it was very dangerous to travel over such part of the highway with a horse of average gentleness." This is in direct conflict with the true intent and clearly expressed meaning of the defendants' charter, which provides "that said railway shall be so located that in the construction, completion, use and occupation thereof it shall not in any way interfere with the turnpike road of the Cheshire Turnpike Company, so as to impede or endanger the safety of the public in traveling thereon."

3. The third count is unquestionably good. The gravamen of this count is negligence in the running of their train by the defendants. This negligence is admitted by the demurrer and found by the court.

PHELPS, J. As no recovery was had upon the first and fourth counts in the declaration, we shall not consider at length the effect of the judgment of the Superior Court in overruling the demurrers to those counts, except for the purpose of meeting the claim that as this is a motion in error, a reversal should follow any error in law committed by the court and properly assigned, though not very material in its effect upon the judgment. Those counts are both framed to charge the defendants with negligence in not having constructed and maintained fences or guards along the line of of its railroad over, upon, and adjoining, the land of the Cheshire Turnpike Company, and immediately contiguous to the traveled path of the turnpike road.

By a clause in section sixth of the defendants' charter, passed in 1846, it is provided that " said railroad shall be so located that in the construction, completion, use and occupation thereof, it shall in no way interfere with the turnpike road of the Cheshire Turnpike Company, so as to obstruct, impede or endanger the safety of the public in traveling thereon"; and that " said corporation may apply to any judge of the Superior Court who may by law judge

between the parties, who shall after notice given appoint three disinterested persons to determine whether said corporation has complied with the provisions aforesaid, and if approved by them their decision shall be final." 4 Private Laws, 890.

Pursuant to the aforesaid provisions, the defendant on the completion of that part of its railroad applied to a judge duly qualified who appointed a committee for the purpose aforesaid, who upon notice and hearing adjudged that in the location, construction, use and occupation of its railroad the defendant had complied with the provisions of its charter, and that the railroad would not in any way "interfere with said turnpike road so as to obstruct, impede or endanger the safety of the public in traveling thereon."

This was, *primâ facie*, sufficient at the time to justify the defendant in operating its railroad, and if there had been no subsequent legislation on the subject, there would be great force in the claim of the defendant that those counts were insufficient because by the terms of its charter the defendant had done all that was required. But in 1869 the General Assembly enacted a statute requiring " every railroad company to construct and maintain good and sufficient railings or fences on one or both sides of any part of its road which is within the limits of any public highway or turnpike road or adjoining thereto, when necessary to the safety of persons or property passing over such highway or turnpike." Revision of General Statutes, 1875, p. 326.

Whatever may have been the danger in 1847, when the business of the defendant and the number of its trains were comparatively small, it is found by the court that at the time of the occurrence of the accident to the plaintiffs, the running by the defendant of its trains at that place in the manner they were accustomed to be run, rendered it very dangerous to travel upon the turnpike with a horse of ordinary gentleness, and that the defendant was guilty of negligence, and that no negligence of the plaintiffs contributed to the injury. This provision of the statute applies as well to the defendant as to every other railroad company, and *pro tanto* operates

to modify its charter, which by its terms is at any time open to legislative alteration. In this view of the case, it is obvious that the judgment of the Superior Court in overruling the demurrers to those counts was correct.

The third count charges the defendant with negligence generally in so carelessly and improperly conducting its locomotive and train as to frighten the plaintiffs' horse and overturn the carriage in which they were riding and thereby greatly injure one of the plaintiffs. The want of a fence or railing by the sides of. the track forms no part of the gravamen, and it is therefore free from the objection which the defendant makes to the other counts in the declaration. As a count adapted to the purposes for which it seems to have been designed it is sufficient. The plaintiffs' horse may have been frightened by the improper management of the locomotive and train independently of the want of a guard, and the injury may have had no connection with the absence of such protection, and the demurrer to this count was also properly overruled.

The most serious difficulty which we experience in sustaining the judgment of the court below, arises from the second count and the pleadings relating to it, and the finding and judgment of the court thereon, but we are inclined to consider it not insuperable. This count specially alleges the charter provision requiring the defendant's. road to be so located as in its construction, completion, use and occupation to in no manner interfere with the road of the Cheshire Turnpike Company, so as to obstruct, impede or endanger the safety of persons passing on the turnpike. The defendant pleaded specially the decision of the committee herein before stated. To this the plaintiffs replied that that decision was obtained from the committee by the fraud and covin of the defendant; to which the defendant specially demurred, and for cause assigned the want of allegation in the plaintiffs' replication of any specific acts of the defendant or of any of its officers or agents done or authorized which constituted the fraud or covin charged, or of what it consisted, or by whom, or when, or where, the same was practised. The

court finds true the facts alleged by the defendant in its plea, and also finds that the defendant's demurrer to the plaintiffs' replication admits, because it does not deny, that the decision of the committee was obtained by the fraud and covin of the defendant, and that upon this record admission, and the facts found by the court, the defendant had failed to comply with the terms of its charter, and that the plaintiffs are entitled under this and the third count to substantial damages; and therefore overruled the demurrer and assessed such damages.

The errors assigned with respect to this count are that the court improperly overruled the demurrer to the replication, and incorrectly decided that the demurrer admitted that the decision of the committee was obtained by the fraud and covin of the defendant, and erroneously adjudged from said admission, and from the facts found, that the defendant had failed to comply with the provisions of its charter in the location and construction of its railroad.

The demurrer proceeds entirely on the theory that the plaintiffs should have specially averred in their replication, the particular acts which constituted the fraud and covin of which they complained, and the persons by and upon whom, and when and where, they were practised. We are not prepared to say the replication is for that reason demurrable. The plaintiffs had no special interest in the matter to which the alleged fraud relates. The parties to it were the officials of the railroad company or the committee appointed by a judge of the Superior Court, or both. By whomsoever perpetrated, neither the plaintiffs nor the public generally were in a situation to know the circumstances; and they cannot now, after this lapse of time, be able to state particularly the means used. Moreover the demurrer is to the replication, which follows substantially the forms prescribed in Chitty, and in other works on pleading. The authorities seem to allow a more general averment in replications; especially under circumstances similar to those existing in the present case.

The allegation of fraud and covin was material, and if well made, and not traversed, would be held to be admitted.

to be true, and it would reasonably, though not necessarily, follow as a legal conclusion that a decision so obtained was void, and that therefore the defendant had not sufficiently established the fact of the proper location, construction and use of its railroad, and upon that state of facts the plaintiffs would seem entitled to a judgment for substantial damages. We are inclined to this conclusion notwithstanding some of the nicer technicalities of pleading may seem to stand somewhat in the way. The railroad of the defendant runs in and along a principal highway and thoroughfare for the distance of a half mile, and the view at the place where the accident occurred was so obstructed by bushes left by the defendant to be growing on the sides of the track, and by a curve in the defendant's road, that approaching trains could be seen but a short distance, and the plaintiffs' injuries, without fault on their part, were so severe, that we are disinclined without more substantial cause being shown to disturb a judgment which we consider manifestly just.

There is no error in the judgment.

In this opinion the other judges concurred.