## WOODSON *v.* STATE.

Opinion delivered October 26, 1900.

1. CONSTITUTIONAL LAW—CLASS LEGISLATION.—The act of April 10, 1899, § 1, which makes it the duty of "every corporation, company or person engaged in the business of mining and selling coal by weight or measure, and employing twenty or more persons, to procure and constantly keep on hand at the proper place the necessary scales and measures, and whatever else may be necessary, to correctly weigh and measure the coal mined by such corporation, company or person," is not unconstitutional as discriminating in favor of small coal operators, in not requiring them to keep scales and measures on hand. (Page 524.)

2. DOMESTIC CORPORATION—POWER TO ALTER CHARTER.—The act of April 10, 1899, § 2, which provides that "all coal mined and paid for by weight shall be weighed before it is screened, and shall be paid for according to the weight so ascertained, at such price per ton or bushel as may be agreed on by such owner or operator and the miners who mined the same," being prospective in its operation and interfering with no vested rights, in so far as it relates to domestic corporations engaged in operating coal mines, is a valid exercise of the power reserved, by Constitution 1874, art 12, § 6. to the state "to alter, revoke or annul" corporate charters. (Page 526.)

3. FOREIGN CORPORATIONS—POWER TO REGULATE.—Under Const. 1874, art 12, § 11, providing that "foreign corporations may be authorized to do business in this state under such limitations and restrictions

as may be prescribed by law, provided * * * they shall be subject to the same regulations, limitations and liabilities as like corporations of this state," foreign corporations engaged in the business of mining coal in this state are subject to the provisions of the act of April 10, 1899. (Page 528.)

4. CORPORATIONS—REGULATION OF AGENTS' ACTS.—Where the state has the right to forbid the performance of certain acts by corporations, it may enforce such law by imposing a penalty upon the agents of corporations who may perform the forbidden acts. (Page 529.)

5. CONSTITUTIONAL LAW—INFRINGEMENT OF POWER TO CONTRACT.—The act of April 10, 1899, in so far as it regulates corporations engaged in the business of mining and selling coal, is not an abridgment of the right of laborers in coal mines to enter into contracts with their employers. (Page 529.)

Appeal from Sebastian Circuit Court, Greenwood District.

STYLES T. ROWE, Judge.

STATEMENT BY THE COURT.

C. C. Woodson, the agent and manager of the Central Coal & Coke Company, a corporation engaged in the business of mining and selling coal in this state, was indicted for failing to weigh coal before it was screeened and pay for it according to the weight so ascertained. Upon a trial of such charge in the circuit court, Woodson was convicted and fined $25. From this judgment he appealed.

*W. C. Perry,* of Kansas City, Mo., for appellants; *Ira D. Oglesby,* of counsel.

The act of April 10, 1899 (Acts 1899, p. 165) is unconstitutional. 51 S. W. 638; Const. Ark. art. 2, §§ 2, 3, 8, 29; Const. U. S. Amdt. xiv, § 1. The statute is void because, without just cause or distinction, it imposes unequal burdens upon those whom it arbitrarily classifies. Cooley, Const. Lim. (5th Ed.), 484, 486; 142 Ill. 380; 42 N. J. L. 435, 440; 1 Thompson, Corp. § 593; Cooley, Const. Lim. (6th Ed.), 429, 482, 483; 44 N. J. Eq. 427, 435; 82 Fed. 257; 13 Fed. 722, 723; 165 U. S. 150, 165; S. C. 17 Sup. Ct. Rep. 255; 40 Fed. 126; 40 N. E. 156-7; 59 N. W. 362, 364; 71 Fed. 931; 22 S. W. 350, 351; 31 S. W. 781; 29 Atl. 646; *ib.* 734; 118 U. S. 356; S. C. 6 Sup. Ct. Rep. 1054, 1070; 154 U. S. 362; S. C. 14 Sup. Ct. Rep. 1047; 164 U. S. 578; S. C. 17 Sup. Ct. Rep. 198, 204; 48 Minn. 236; 38 Pac. Rep. 500; 43·

N. E. 490; 26 La. Ann. 671; 22 Atl. 120; 26 N. E. 1069; 32 Kan. 431, 434; 55 Pac. 878; 134 U. S. 232; S. C. 10 Sup. Ct. Rep. 533; 45 N. W. 156; 113 U. S. 27; 58 Ark. 407; S. C. S. W. 75; 55 Pac. ..; 49 Ark. 291; S. C. 5 S. W. 294; 51 N. W. 136; 51 N. E. 872; 43 S. W. 513. The evidence in the case fails to sustain the charge of fraud. The statute was not valid as an exercise of police power. Tied. Lim. Pol. Pow. 572, 233, 234, 289, 290; 2 Hare's Am. Const. Law, 450; 16 S. E. 459; 19 S. E. 458, 470; Cooley, Const. Lim. (5th Ed.) 706; Potter's Dwarris, Stat. 458; 16 Pick. 121; 7 N. E. 631, 634; 31 N. E. 395, 399; 98 N. Y. 98, 107, 110; 17 N. E. 343, 346; 39 Ark. 353; Dill. Mun. Corp. (3d Ed.) 142; 66 Ill. 37; 77 Wis. 288; 60 N. W. 355, 357; Black, Const. Prohib. 62, 82; 55 Cal. 550; 86 Tenn. 272; 98 N. C. 778; 98 Cal. 73; 24 L. R. A. 226; 47 N. E. 302; 71 N. W. 400; 46 Pac. 255; 44 Pac. 803; 2 Wils. Works, 393; 9 Mich. 285, 309; 115 U. S. 650; Suth. Stat. Const. 370; 27 Vt. 154; 153 N. Y. 188; 137 U. S. 90. The act is void, as violative of both state and federal constitutions, because it restricts the right to contract, attempts to take property without due process of law, and denies to certain citizens the right of civil liberty and to the pursuit of happiness. 25 S. W. 77; 111 U. S. 746; 53 Tex. 172; 32 N. E. 274; 118 U. S. 369; 1 Coke's Inst. ch. II, 81a; 2 Yerg. 260, 269; *ib.* 599, 605; 1 Dev. Law (N. C.), 15; 2 Tex. 250; 5 Mich. 25; 11 Mass. 405; 40 N. E. 454, 455. The right to contract in a lawful private business, on terms satisfactory to the parties, is a part of the natural liberty of the citizen. 2 Story, Const. § 1950; 4 McLean, 489; 6 N. Y. 341; 53 N. Y. 245; 2 Wilson's Works, 300, 302; Cooley, Prin. Const. Law, 255; Mill on Liberty, 27, 28; Lieber, Civ. Lib. 270; Spencer, Social Statics, 36, 45, 55; Spencer, Ethics, 45, 46, 47, 58, 59. The act is void because it takes from a man the result of his labor without due process of law. 95 U. S. 714; 92 U. S. 480; 111 U. S. 701; 24 U. S. 511; 4 Hill, 140, 143; 35 Kan. 271, 277; 1 Fed. 481; 111 U. S. 746. The act is void as an attempt to regulate wages. Tied. Lim. Police Power, 509, 569, 572, 233, 234; 53 Pac. 371; 51 N. E. 853; 8 Pa. Sup. Ct. 339.

*Jefferson Davis, Attorney General, Charles Jacobson* and *Morris M. Cohn,* for appellee.

Foreign corporations have no absolute rights beyond those given by the legislature, which may dictate the terms on which

they may do business in the state. 155 U. S. 648, 652; 13 Pet. 519; 18 How. 404; 6 Wall. 594; *ib.* 611; *ib.* 632; 8 Wall. 168; 10 Wall. 410; 15 Wall. 284; 18 Wall. 5; *ib.* 206; 92 U. S. 575; 122 U. S. 326; 127 U. S. 1; 134 U. S. 594; 142 U. S. 217; 153 U. S. 436, 445; 66 Ark. 466; S. C. 51 S. W. 693; 62 Ark. 63, 69; 125 U. S. 181, 190; 4 Thomp. Corp. § 7898; 15 Pet. 519, 588. No one, not interested in or affected by it, can question the constitutionality of a statute. 85 Ky. 557; 20 S. W. 285; 23 Miss. 600; 7 Nev. 223; 24 N. J. L. 266; 72 N. Y. 211; 89 N. Y. 75; 90 N. Y. 498; 49 Hun, 466; 47 Ohio, 478; 3 R. I. 64; 47 S. C. 75; 22 Gratt. 833; 25 W. Va. 427; 3 Wy. 719; 48 Ala. 540; 110 Ala. 308; 24 Fla. 55; 145 Ind. 439; 73 Ky. (10 Bush), 681, 691; 79 Ky. 22; 47 La. Ann. 568; 51 Me. 449; 18 Neb. 416; 3 S. Dak. 29; 4 Blatchf. 263; 3 Mackey, 32; 48 Ala. 540; 6 Allen, 360; 3 S. W. 580; 8 Cow. 543; 25 W. Va. 427. If appellant had been a domestic corporation, the legislature still had power to bind it by the act in question. 58 Ark. 407, 428; 25 Atl. 246. The act was a valid exercise of the police power of the state. 165 U. S. 165; 169 U. S. 366, 391, 392, 395, 397; 165 Mass. 462; 113 U. S. 703; 65 Cal. 33; 113 U. S. 27; 39 Oh. St. 651; 84 Ala. 17; 76 Tex. 559; 53 Ga. 613; 56 Conn. 216; 127 U. S. 678; 81 Ia. 642; 38 N. H. 426; 45 Hun, 41; 36 W. Va. 82; 55 Ind. 74; 16 Wall. 36; 76 Ala. 60; 104 N. C. 714; 32 W. Va. 802; 23 N. E. 253; 53 Pac. 371; 147 U. S. 449; 143 U. S. 110; 164 Pa. St. 306; 113 U. S. 703; 113 U. S. 27; 169 U. S. 366. *Cf.* Sand. & H. Dig., §§ 1513, 1515, 1510, 1517, 1539, 1584, 1586-1590, 1627. Doubts respecting the constitutionality of a statute are to be resolved in its favor. 56 Ark. 485, 495; 59 Ark. 513; 58 Ark. 407; 11 Ark. 481; 36 Ark. 171.

*W. C. Perry,* for appellants, in reply; *Ira D. Oglesby,* of counsel.

Corporations are persons within the fourteenth amendment. 18 Fed. 385, 398, 402, 404; 164 U. S. 578, 592; *id.* 686, 689.

RIDDICK, J., (after stating the facts). The only question that we are asked to determine on this appeal is whether the act of April 10, 1899, upon which the prosecution and judgment in this action are based, is a constitutional and valid statute. The first section of the act makes it "the duty of every corporation, company or person engaged in the business of mining and selling coal by weight or measure, and employing twenty or more persons,

to procure and constantly keep on hand at the proper place the necessary scales and measures, and whatever else may be necessary, to correctly weigh and measure the coal mined by such corporation, company or person." The second section is as follows: "All coal mined and paid for by weight shall be weighed before it is screened, and shall be paid for according to the weight so ascertained, at such price per ton or bushel as may be agreed on by such owner or operator and the miners who mined the same; *provided,* that nothing in this act shall be so construed as to prevent said owner or operator from having the right to deduct the weight of any sulphur, slate, rock or other impurities contained in the car and not discoverable until after the car has been weighed." Another section provides a punishment for failure to comply with the provisions of the act on the part of persons, corporations and their agents and employees.

It is said by counsel for appellant that this is class legislation, that it is an arbitrary and unreasonable attempt on the part of the legislature to divide the operators of coal mines into two classes, that it permits such an operator employing less than twenty men to pay for digging his coal according to the weight of screened coal produced, while the operator employing twenty men must weigh his coal before screening it, and pay according to the weight thus ascertained. But we do not so understand the statute. The first section, it is true, requires only those operators of coal mines that employ twenty or more persons to keep on hand certain weights and measures, but the second section, for a violation of which the defendant is being prosecuted, applies, it seems to us, to all operators of coal mines. The language is, "all coal mined and paid for by weight shall be weighed before it is screened," etc. This includes the small as well as the large operator, though by the first section the operator employing less than twenty men is not required to procure and keep on hand the weights and measures mentioned. He can, if convenient, use the scales or measures belonging to others, but if there are none such convenient he must necessarily keep them, or he cannot pay for his coal by weight. The obvious reason for the distinction in the first section is that it might be very burdensome to require the small operator to keep on hand an expensive set of scales and measures, when his situation might make this unnecessary; whereas the large operator would usually need such scales and measures, and the requirement as to him would usually be less burdensome

than it would be upon the small operator. This, it would seem, furnishes a justification for the distinction made by the legislature in the first section, while as to the second section, the one involved here, there is no distinction made. All operators are by it treated alike, and required to weigh before screening all coal mined and paid for by weight. It therefore seems to us that the contention that this statute is an example of arbitrary and unreasonable class legislation cannot be sustained.

It is next said that the act violates the constitution of the state and of the United States "by restricting the right of contract by taking property without due process of law, and by denying to certain operators and workers in coal mines the right of civil liberty and the pursuit of happiness." In support of this contention, counsel for appellant has favored us with an able and entertaining brief, in which they discuss at considerable length the question of the right of the citizen to make contracts and acquire property. But that is a field into which we need not enter in this case; for, if we concede the contention of counsel that "the right to contract in a lawful private business on terms satisfactory to the parties is a part of the natural liberty of the citizen which the legislature cannot take away," it does not follow that a corporation is equally exempt from legislative control in that respect. The citizen does not derive his right to contract from the legislature. The corporation does, and it possesses only such powers as may be conferred upon it by the legislative will, and these, under our constitution, are liable to be altered, revoked or annulled by the power that granted them. Art. 12, § 6, Const. of Ark. The plain purpose of this constitutional reservation was to keep corporations under legislative control. The only limitation on this power of the legislature contained in our constitution is that the alteration, revocation or annulment of the corporate powers must be made "in such manner that no injustice shall be done to the corporators." Speaking for myself only, it seems to me that this limitation that "no injustice shall be done to the corporators" is nothing more than would have existed, in the absence of such words, from general rules of law. In the absence of such words, the courts would have implied the limitation that no injustice should be done the corporators, for the legislature cannot confiscate the property of the corporation. This power to alter, revoke or annul "cannot be used to take away property already acquired under the operation of the charter, or to deprive

the corporation of the fruits actually reduced to possession of contracts lawfully made." *Sinking Fund Cases,* 99 U. S. 700, 720; *St. Louis, I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 409.

But it cannot be said to be unjust to the corporators for the state to exercise this reserved power by taking away either a part or all of the corporate powers of domestic private corporations organized since the adoption of the constitution above referred to, for the constitutional provision reserving such power to the state enters into and forms a part of the corporate charters of such corporations. When the state alters or revokes the charter, when it takes away part or all of the corporate powers, it is only acting within the contract made with the corporators in the beginning. But, in exercising the power to alter or revoke, the constitution requires that the property rights of the corporation shall be protected, and that the legislature shall not, under the pretense of altering or revoking the charter, deprive the corporation of its property or of the benefit of contracts lawfully made. To do so would be manifestly unjust, and the law would not permit it. The alteration or revocation of the corporate powers must be effected in such a way as to work no injustice to the corporators. "Personal and real property acquired by the corporation during its lawful existence, rights of contract, or choses in action so acquired, and which do not in their nature depend upon the general powers conferred by the charter, are not destroyed by such a repeal; and the courts may, if the legislature does not provide some special remedy, enforce such rights by the means within their power." *Greenwood* v. *Freight Co.* 105 U. S. 13.

Whether injustice has been done the incorporators depends upon the facts of each case in which an alteration or revocation of corporate powers has been attempted. But we do not see that the statute under consideration here is open to any such objection. It was made to take effect ninety days after its passage, and was prospective in its operation. It did not interfere with vested rights or existing contracts, or deprive such corporations of any property possessed by them. The purpose of the act, as shown in the title and in the act itself, was to protect a class of laborers against certain frauds which the legislature supposed might be perpetrated upon them in the process of screening, when coal was not weighed until after it had been screened. The act does not require the coal to be weighed when the laborer or miner is paid by the hour or day, or when he is paid by measure and not by

weight.  Even when the laborer is paid by the weight of the coal mined, it does not attempt to regulate the price to be paid, but expressly leaves that to be settled by the agreement of the parties.

There may be difference of opinion as to the wisdom of such legislation, or as to whether this law will have the effect intended by the legislature.  Yet, even if we were convinced that the law was unwise, that would furnish no grounds for refusing to enforce it; for "it is not the province of the courts to supervise legislation, and keep it within the bounds of propriety and common sense." Sutherland, Stat. Const. § 238.  The question of the expediency of such a law is left alone to the legislature.  Being satisfied that this control of these corporations engaged in the business of mining coal in this state is authorized by the power reserved in the constitution to "alter, revoke or annul" their charters, we must hold this statute to be valid.  A full discussion of this question of the legislative authority to control corporations under this reserved power in the constitution can be found in the following cases: *Leep* v. *Railway Co.* 58 Ark. 407; *St. Louis, I. M. & S. Ry. Co.* v. *Paul,* 64 *ib.* 83; *St. Louis, I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 404.  Also in 4 Thompson, Corporations, §§ 5408-5419; 2 Tiedeman, State & Fed. Control, 950.

It is said in the argument that the Central Coal & Coke Company, for whom the defendant was acting when he committed the acts complained of in this prosecution, is a non-resident corporation, organized under the laws of Missouri, and that consequently the provision in the constitution of this state in reference to the alteration, revocation and annulment or charters of domestic corporations does not apply.  And this is no doubt true; but, as we said in the cases against the insurance companies, and as the supreme court of the United States has often held, the legislature has power entirely to exclude foreign corporations from doing business in this state, and can, of course, dictate the terms upon which such companies, may do business here.  *State* v. *Lancashire Ins. Co.* 66 Ark. 466; *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28; *Paul* v. *Virginia,* 8 Wall. 168, 181.

Such a corporation, to quote the language of the supreme court of the United States in the case last cited, "having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows as a matter of course that such assent may be granted upon such terms and conditions as those states may think proper

to impose. They may exclude the foreign corporations entirely; they may restrict its business to particular localities; or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

Our state constitution recognizes this right of the state by providing that foreign corporations may be authorized to do business in this state under such limitations and restrictions as may be prescrbed by law. "Provided that * * * they shall be subject to the same regulations, limitations and liabilities as like corporations of this state, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this state." Const. 1874, art. 12, § 11. It will be seen from this section of our constitution that the legislature has no power to give a foreign corporation greater powers, privileges or franchises than may be exercised by like domestic corporations. "The power of a state," says the United States supreme court, "to impose conditions upon foreign corporations is certainly as extensive as the power over domestic corporations." "That which a state may do with corporations of its own creation it may do with foreign corporations admitted into the state." *Orient Ins. Co.* v. *Daggs,* 172 U. S. 566.

We are, therefore, of the opinion that this act is a valid law, so far as it affects corporations, either foreign or domestic.

It is said that the defendant in this case is not a corporation, but a natural person. But he was acting for a corporation, and, if the state has the right to forbid certain acts on the part of corporations, it can enforce such law by imposing a penalty upon the agents of corporations who may commit the forbidden act.

The contention that this law unlawfully abridges the right of the laborer to contract cannot be sustained. The right to contract upon the part of the citizen is not unlimited. One has no right to complain that the law will not permit him to make valid contracts with an infant or insane person, or that it will not allow him to make usurious or other forbidden contracts. It is equally plain that, if one deals with a corporation, he can only make such valid contracts with it as the law may authorize it to make. He cannot complain that the powers of such company to contract are limited and less than those of a natural person. If this law is valid as to corporations, the laborers who deal with such corporations have no right to complain, and much less does the corporation

S C—34

have the right to complain that the law infringes upon the contractual powers of its employees. We are not called on in this case to decide whether this statute is valid as against owners and operators of coal mines other than corporations. It is sufficient to say that we are of the opinion that so much of the statute as is questioned in this case is valid as to corporations owning and operating coal mines in this state. That being the only question presented on this appeal, the judgment of the circuit court must be affirmed.

WOOD, J., not participating.

BATTLE, J., (concurring). Section 2 of article 12 of the constitution of this state ordains: "The general assembly shall pass no special act conferring corporate powers," etc.; and section 6 of the same article provides: "Corporations may be formed under general laws; which laws may from time to time be altered or repealed," etc. Under these sections the general laws under which a corporation is formed constitute its charter. *People* v. *Chicago Gas Trust Company,* 130 Ill. 268, 285; Morawetz, Private Corporations (2d. Ed.), § 318. The constitution specially provides that these general laws can be altered or repealed. As they form a part of the charter, the amendment or repeal of them operates as an amendment or repeal of the charter. *Durand* v. *New Haven, etc., Co.* 42 Conn. 211; 1 Thompson, Corporations, § 94.

There is, however, a limitation upon the power to amend or revoke the charter of a corporation. Section 6 of article 12 of the constitution further provides: "The general assembly shall have power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of the state; in such manner, however, that no injustice shall be done the corporators." The last clause of this section, in my opinion, applies to the amendment, as well as the repeal. I can see no reason why injustice should be prohibited in the one case and not in the other. The limitation is not confined by the section to the power to repeal.

In the absence of such a limitation, learned judges have held that there is a limit upon the reserved power to amend or repeal the charter, and that it must be exercised upon terms that are just or reasonable. In *Lothrop* v. *Stedman,* 42 Conn. 590, Mr. Justice Shipman, in delivering the opinion of the court, said:

"When a charter itself or a general statute provides that the charter is subject to repeal by the legislature, at its pleasure, without restrictions or conditions limiting the power of repeal, the legislature has the right to exercise its power summarily and at will, and its action, being a legislative and not a judical act, cannot be reviewed by the courts, unless it should exercise its power so wantonly and causelessly as palpably to violate the principles of natural justice, and in such a case a repeal, like other legislative acts which do thus palpably violate the principles of natural justice, may be reviewed by courts."

In *Miller* v. *State,* 15 Wall. 498, Mr. Justice Clifford, in delivering the opinion of the court, and in speaking of the power to amend or repeal reserved in the charter of a private corporation, said: "Power to legislate, founded upon such a reservation in a charter to a private corporation, is certainly not without limit, and it may well be admitted that it cannot be exercised to take away or destroy rights acquired by virtue of such a charter, and which, by a legitimate use of the powers granted, have become vested in the corporation, but it may be safely affirmed that the reserved power may be exercised, and to almost any extent, to carry into effect the original purposes of the grant or to exercise the due administration of its affairs so as to protect the rights of the stockholders and of creditors, and for the proper disposition of the assets."

In *Shields* v. *Ohio,* 95 U. S. 319, 324, Mr. Justice Swayne, in delivering the opinion of the court, says: "It is urged that the franchise here in question was properly held by a vested right, and that its sanctity, as such, could not be thus invaded. The answer is, *consensus facit jus.* It was according to the agreement of the parties. The company took the franchise subject expressly to the power of alteration or repeal by the general assembly. There is, therefore, no ground for just complaint against the state. Where an act of incorporation is repealed, few questions of difficulty can arise. Equity takes charge of all the property and effects which survive the dissolution, and administers them as a trust fund, primarily for the benefit of creditors. If anything is left, it goes to the stockholders. Even the executory contracts of the defunct corporation are not extinguished. The power of alteration and amendment is not without limit. The alterations must be reasonable; they must be made in good faith, and be consistent with the scope and object of the act of incorpora-

tion. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration."

In *Sinking Fund Cases,* 99 U. S. 721, Mr. Justice Waite, in delivering the opinion of the court, after quoting the last two sentences of the last quotation, said: "The rules as here laid down are fully sustained by authorities."

Mr. Cook, in his work on Corporations, says: "The extent of the power of the legislature to amend a charter, where it has reserved that power, is not yet fully settled, and is full of difficulties. There is a strong tendency in the decisions, and a tendency which is deserving of the highest commendation, to limit the power of the legislature to amend a charter under this reserved power." 2 Cook, Corp. (4th Ed.) § 501. But there is a contrariety of opinion on this subject. 4 Thomp. Corp. §§ 5409, 5411. Finding the law upon this question unsettled, the constitutional convention of 1874, in reserving the power to amend or repeal the charters of corporations, provided that it should be exercised on terms that are just to the corporators, adopting the view of those who hold that the power to amend or repeal shall be exercised in that manner.

Does section 2 of the act of April 10, 1899, exceed authority of the general assembly to legislate as to corporations by limiting their rights in an unjust manner? It does not prohibit the screening of coal, nor does it interfere with the right of the parties to agree upon the price to be paid for mining coal, but merely provides that "all coal mined and paid for by weight shall be weighed before it is screened, and shall be paid for according to the weight so ascertained." The object of the act seems to be to secure to the miner pay for all coal mined by him, and in this manner to prevent his employer depriving him of a just reward for his labor. There is nothing in the act prohibiting the employer and miner from agreeing that coal shall be paid for in conformity to its weight before screened, according to the proportion that so much of the coal as shall pass through a screen shall bear to the whole amount weighed, that is to say, agreeing that so much (the price stipulated) shall be paid according to the total weight, if one-third, one-fourth, one-fifth, or whatever proportion of it passes through a screen after it has been weighed. Construed in this manner, section 2 of the act is just and reasonable, the object of it is accomplished, and it is constitutional, so far as it applies to corporations.

I concur with Mr. Justice Riddick in the opinion delivered by him, in so far as it does not conflict with what I have said in this opinion.

HUGHES, J. I concur in this opinion.

BUNN, C. J., (dissenting). The main question in this case is the constitutionality of the act of the general assembly entitled, "An act to prevent fraud in weighing and measuring coal, and requiring the same to be weighed before screening, and for other purposes," approved April 10, 1899. What the "other purposes" may mean, we have no means of ascertaining, for no "other purposes" are indicated in the act. I take it therefore that to "prevent fraud against" the miner is the sole purpose of the act.

I desire to say in the outset that an act having that particular end in view is or may be entirely unobjectionable from a constitutional standpoint if it be a general act, subject however to the inalienable rights of the parties concerned; for instance, subject to the inalienable rights of the parties to acquire and hold property, and consequently to make their own contracts which do not injure the public or others. Such an act is or may be good where no private contract between the parties touching the subject has been made. In other words, it is only where such an act seeks to restrict the individual inalienable rights of the parties that it can be called in question.

What are the inalienable rights of the citizens of this state in respect to making contracts? The second section of the bill of rights of our present constitution reads: "All men are created equally free and independent, and have certain inherent and inalienable rights, amongst which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness. To secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed." All men, it is said, are created, not only free, but equally free. The succeeding section declares the equality of all persons before the law. It is also declared as a principle of government, in the section quoted above, that to secure these inherent and inalienable rights, not to fritter them away, governments are instituted. They have no other real purpose, and all details must lead up to that, or else they are subversive of the true theory of government.

It is well settled by all the courts, from the highest to the

lowest, that, coming within the meaning and scope of "acquiring, possessing and protecting property," and other kindred inherent and inalienable rights, is the right to contract; for without this right the right to acquire property would be mainly cut off, and be nugatory. I need not therefore cite authorities to sustain that position.

The twenty-second section declares the right of property to be "before and higher than any constitutional sanction even, and, while in the next succeeding section (23) the right of eminent domain is fully conceded to the government of the state, yet no private property can be taken under the mere pretense of mere superiority of the public demand and exigency, but the same must be paid for in advance. And, to make assurance doubly sure against the encroachments of government on private rights, the twenty-ninth section of the bill of rights declares that the enumeration of rights in preceding sections shall not be construed to be a denial or disparagement of other rights retained, and so forth. In the federal constitution provisions of similar import are to be found. So sacred are these inherent and inalienable rights, not only in this country, but among English speaking people everywhere, that no man in all the race, however humble he may be, if once informed of the real question before him, would voluntarily surrender one of them, or one iota of any one of them.

But the opinion of the court, while conceding the foregoing to be true, propounds the doctrine that an individual who has become a member of a domestic corporation in some way has surrendered the inalienable right in so far as the corporate enactments have restricted his inalienable right. To admit the soundness of such a doctrine would be to admit that the legislature could so provide by enactment that one could waive or surrender any of these inalienable rights, in consideration of being endowed with the privilege of managing his affairs in conjunction with others in corporate capacity. The natural freedom of the citizen is a more costly thing than that. Not only cannot the legislative department provide law general or special for the citizen to sell himself in this way, but this court has said that the legislature could not amend the bill of rights, as was attempted to be done, by the formulary of amending the constitution, given in the constitution of 1836, by which such amendment was in effect submitted to the people. See *Eason* v. *State,* 11 Ark. 481.

The opinion in that case forcibly expresses the sentiment of our southern forefathers on the relative rights of government and the private citizen. Moreover, that generation held to the doctrine that when once civil and political rights were recognized in a man, he was thenceforth the equal of any other man before the law, and for that reason what is now known as paternal government had no place in their notions of government. I think it is well to adhere to these old notions as to fundamentals.

But the opinion of the court makes a distinction between the citizen when he assumes to act alone, and when he acts as a corporator, under the incorporation laws of the state. I do not deem it essential to this discussion to do more than note the distinction between corporations and public and *quasi* public corporations, for the case before us involves a private corporation only. In so far it is distinguished from the case of *Leep* v. *Railway Company,* cited in brief of counsel;* and upon different grounds it is distinguished from the case of *St. Louis, Iron Mountain & So. Railway Company* v. *Matthews,* 64 Ark. 398.

Whether there be any distinction between the citizen acting in an individual and in a corporate capacity is well worthy of inquiry.

The constitution, article 12, section 6, reads: "Corporations may be formed under general laws; which laws may, from time to time, be altered or repealed. The general assembly shall have the power to alter, revoke or annul any charter of incorporation now existing, and revocable at the adoption of this constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of the state; in such manner, however, that no injustice shall be done to the corporators."

It is more convenient and more logical to consider first the latter clause of this section.

In order to get at the real meaning of constitutional provisions and statutory enactments, it is allowable to take into consideration the circumstances surrounding their adoption and enactment. It will be observed from the clause now under consideration that all charters of incorporation which had become revocable at the time of the adoption of the constitution, and all such as might thereafter be created which in the opinion of the legislature might be injurious to the public, might be altered, revoked or annuled

---

* 58 Ark. 407.

by the legislature.    Until the adoption of the constitution of 1868, corporations in this state were created only by special act of the legislature.    Under the constitution of 1868, all corporations were formed under general laws, and not otherwise.    Under the present constitution, corporations could be formed under general laws, but the legislature was not confined by the plan of incorporating by general laws, but might still incorporate by special act, unless there is something in the language of section 18 of the bill of rights which restricts the legislature in this regard.

When the present constitution was being adopted, there were possibly some charters granted by special act, which the corporators had not entitled themselves to by neglecting or refusing to comply with the conditions precedent therein named.    These were, in the language of the constitution, revocable for that cause.    It is well known also that many paper corporations had been formed under the general laws enacted under the constitution of 1868, in which the corporators had failed to comply with the law, in order to entitle them to the privileges of being incorporated.    These were for that reason held to be revocable, and the constitution conferred upon the legislature the power so to declare, and thereby revoke or annul.    Or, if so asked by the corporators, the legislature might alter the terms so as to give new life to them.    In none of these provisions was it ever intended to confer upon the legislature any judicial power, or to affect the judicial rights of the incorporators; for whenever corporators should consider themselves injured by the exercise of this annulling and revoking power of the legislature, they could have their day in court, under section 13 of the bill of rights.    All questions such as of non-user and mis-user are judicial questions, and are not the subject of legislation, for they do not come under the head of legislation.    Forfeitures for non-compliance with conditions are more of the nature of ministerial acts, and are most frequently left to the executive, but may be left to the legislature.    But the fact that no injury shall be done to the corporators makes all such acts of reservation and annulment subject to the determination of the courts, if grounds exist therefor.    That is all there is in this second clause of the section, and it evidently has no application to rights under a going charter.

The first clause of the section, the only one having any application here, reads:    "Corporations may be formed under general laws; which laws may from time to time be allowed or repealed."    It is inconceivable that an amendment to a law which is derogatory

of some right guaranteed elsewhere in the constitution, like the right to contract, can be considered as a valid amendment. All amendments must be within the scope of existing constitutional provisions, or they are to be considered unconstitutional; for amendments must stand on the same footing in this respect as original acts, and no original act could stand the test which denied the right of property or the right to contract.

It is unnecessary to consider how far all certificates and charters of incorporation are to be considered in the nature of contracts between the state and the corporators. That the state may, through its legislature, alter or repeal charters, to affect the incorporations for the future, in matters not determined by the constitution itself, will not be denied, but legislation, whether original or by amendment, must respect rights under the constitution, especially those rights which, from the essential principles of government, are inherent and inalienable. I do not think a citizen surrenders, or is required to surrender, any of these rights in consideration of the paltry and sometimes questionable privilege, and merely temporary advantage, of becoming a member of a corporation.

With my way of thinking on such subjects, in so far as the act of the legislature seeks to restrict the right of the miner or operator of the coal mine to enter into, between themselves, a contract otherwise lawful, it is unconstitutional. *Re Preston,* 52 L. R. A. 523, and notes and citations therein.