WESTERN COAL & MINING COMPANY *v.* BURNS.

Opinion delivered July 22, 1907.

1. APPEAL—CONCLUSIVENESS OF VERDICT.—A verdict will not be set aside on appeal merely because it is against the preponderance of the testimony. (Page 77.)

2. MASTER AND SERVANT—DEFECTIVE APPLIANCES—CONTRIBUTORY NEGLIGENCE.—Where plaintiff, an inexperienced youth of fourteen years, was injured by reason of a defect in the appliances furnished by his master, it was a question for the jury to determine whether the danger therefrom was so obvious that plaintiff should be charged with contributory negligence in proceeding with his work with the defective appliances. (Page 78.)

3. SAME—ASSUMPTION OF RISKS.—In determining whether an inexperienced servant fourteen years old appreciated the danger from proceeding in his work with defective appliances, and whether he assumed such risk, the jury might consider his youth and inexperience. (Page 78.)

4. SAME—PROMISE OF MASTER TO REPAIR DEFECTS.—Where a master has expressly promised to repair a defect, the servant does not assume the risk of an injury caused thereby within such a period of time after the promise as would be reasonably allowed for its performance or within any period which would not preclude all reasonable expectation that the promise might be kept. (Page 79.)

5. INSTRUCTION—SHOULD BE SPECIFIC.—Where the defense to a personal damage suit was that plaintiff was guilty of specific acts of contributory negligence, the court, when requested, should submit the question of contributory negligence specifically, although a general instruction submitting the question had also been given. (Page 80.)

6. INSTRUCTION—FAILURE TO ASK CORRECT PRAYER.—A party cannot complain of the failure of the court to instruct specifically upon a certain point in the case where the court has given a correct instruction in general terms on the same subject, if he has not asked for a correct specific instruction. (Page 80.)

7. DAMAGES—WHEN NOT EXCESSIVE.—The plaintiff in a personal injury suit was painfully injured; the flesh and muscles were torn from the

bone of one of his legs; his back and hips were bruised, and he was on crutches for several months; there was evidence of a permanent injury. *Held,* That a verdict of $1,500 damages was not excessive. (Page 81.)

Appeal from Franklin Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

*Ira D.' Oglesby* for appellant.

1. The court should have instructed a verdict for the defendant, because appellee Luther Burns's own testimony fails to establish the acts complained of, is uncorroborated in this respect, and is, moreover, contradictory and contrary to physical facts; it does not prove any negligence on the part of appellant, and shows that he was at a place where he should not have been. 79 Ark. 608; 3 Am. St. Rep. 632; 34 Ia. 153; 15 S. W. 141.

2. It is also clear from his own testimony, if the defects complained of existed, that Burns knew of the defects, was thoroughly acquainted with every part of the mechanism and appliances, understood and appreciated the danger. He must be held to have assumed the risk, and to have been guilty of contributory negligence. 126 Fed. 495, 511, 513.

*Sam R. Chew,* for appellees.

1. Where the master has promised to repair a defect, the servant may rely upon this promise, and may continue in the work, and will not be held to have assumed the risk of injury caused by such defects within such period of time as would be reasonably allowed for its performance, or within any period of time which would not preclude, all reasonable expectation that the promise might be kept. 35 Ark. 602; 54 Ark. 289; 1 Shearman & Redfield on Neg. § 215; 49 Fed. 723; 1 C. C. A. 428; 44 Ill. App. 426; 43 Ia. 362; 14 Am. R. Rep. 575; 85 Mich. 519; 26 N. W. 1086; 82 Ia. 148; 49 N. Y. 521; 43 Ia. 682; 78 N. C. 300; 76 Pa. St. 393; 15 Am. & Eng. R. Cas. 218.

2. The servant will not be held to have assumed the risk of the master's negligence in the discharge of any of the duties he owes to the servant. Before the servant will be held to have assumed the risk, it must be shown that he knew of the master's negligence and realized the danger. 77 Ark. 367; *Id.* 458.

McCULLOCH, J.   This appeal involves judgments for the recovery of damages in two actions against appellant, Western Coal & Mining Company, one instituted by Luther Burns, a minor, to recover for physical and mental suffering and permanent physical injury resulting from alleged negligence of appellant, and the other instituted by Julia Burns, his mother, to recover for loss of his services during disability, expenses of medical attention, nurse hire, etc., resulting from said alleged negligence.   The cases were tried together, and in the first case the judgment was for the sum of $1500, and in the second the judgment was for $300.   Luther Burns was, at the time he received the injuries complained of, a boy fourteen years old, and was employed as a trapper in appellant's coal mine.   His duties were to watch the switch on the pit track and to throw the switch for the motor cars passing along the tracks.

The specific acts of negligence set forth in the complaint were "that the defendant allowed the taps or nuts on the bolts on and the switch in said track to become loose; the nuts to fall off of the bolts, and the threads on said bolts to become so worn that they would not hold and retain the nuts or taps on same, so as to hold said switch in a secure and reasonably safe condition; that the latch that held the rails or should have held the rails in said switch in proper position became so loose that it would not remain in proper position, and allowed and permitted the points of the rails in said switch to become so separated that the said motor and cars, in passing over same, would split and mount said rails and become derailed."   It is alleged that by reason of these defects the motor and cars, in passing over the switch, left the track and struck and injured Burns.

The switch in question was situated at a point where the pit track connects with the main track and with a track running off into another passageway or entry called the 7th north entry, the switch being placed there so as to shift the motor and cars from the pit track to one of these tracks when desired.   The trapper stood at this switch and set it for the motor and cars to go straight on down the main track or into the 7th north entry according to direction.   There was a door across the north entry track which was closed when the accident occurred; and about ten feet beyond this door an air course or chamber ran off at right angles from the entry.   Burns testified that his instructions

were, when he set the switch for cars to pass, to go into this air course and stand until the cars passed. On this occasion a motor with cars attached approached the switch coming down the pit track destined to continue down the main track. Burns testified that he set the switch for the cars to go on down the main track and signalled the motorman accordingly; that, after setting the switch, he went through the door across the north entry and stationed himself back up in the air course, as he was instructed to do. The cars, instead of going straight on down the main track, turned at the switch into the north entry, went through the closed door across the track and in some way struck Burns and injured him. He was found under the motor badly injured. The door was shattered, and some of the cars were piled up on the motor, but the motor was not derailed. Burns testified that, while standing in a stooping position in the air course, he was struck by a board or timber from the shattered door and knocked upon the track, where he was struck and run over by the motor. The principal controversy of fact is whether Burns negligently set the switch for the north entry track, instead of the main track, as he should have done, thereby turning the cars into the north entry, or whether the alleged defective condition of the switch caused it to fail to connect the rails so as to allow the cars to pass on down the main track and to cause them to turn into the north entry.

There was a conflict in the testimony on this point, and, it being sufficient to sustain the finding of the jury, we must treat the question as settled that Burns set the switch properly, and that the defect in the switch caused the cars to turn into the north entry. There was also testimony to the effect that Burns notified appellant's pit boss, who was a vice-principal, of the defective condition of the switch, and that the latter promised to have it repaired, but failed to do so.

Learned counsel for appellant contends with much force that the evidence shows conclusively that Burns could not have been back in the air course where he should have stood after setting the switch, but must have been out on the track or near it when he was injured. If this is found to be true, it precludes recovery, as the employee is bound to obey rules made for his safety and protection, and is guilty of negligence when he fails to do so. It does appear highly improbable that he was back

in the air course, but he swears positively that he was there, and that he was struck on the head by a piece of plank and knocked into the entry where the motor struck him. He is contradicted by other witnesses who testified concerning his physical injury, and who failed to find any wound on his head. We can not say, however, that it was impossible for the injury to have occurred in the way in which Burns swears that it did, and we should not, when the jury have credited his positive testimony, reject it because it is contradicted by circumstances and seems to us, according to the preponderance of the testimony, to be untrue. *Waters-Pierce Oil Co.* v. *Knisel,* 79 Ark. 608, and cases cited.

It is argued that, even if the alleged defects in the switch existed, and the pit boss was informed of their existence and promised to repair them, yet it must be held, as a matter of law, that Burns by proceeding with his work with the defective appliances assumed the risk of injury from such defects.

The court gave the following instruction on this subject over appellant's objection:

"7. If there were defects in the appliances as set forth in the complaint, and the boy, Burns, knew thereof and complained to the pit boss about them, and the boss ordered him to continue his work, saying that he would repair the defect when he got ready, and thereupon the boy, Burns, continued in his work and was injured by reason of such defects, he is not barred from a recovery thereby, if otherwise entitled to recover, if an ordinary boy of his age, experience and intelligence would have continued in the service under the same circumstances."

Appellant asked for the following instruction, which the court, over objection, modified by adding the italicized clause:

"8. If the evidence shows that any bolt connected with the switch was out of repair, and that this caused the accident, yet, if you further believe from the evidence that Burns, for several days prior to the accident, knew of this defect, and knew and appreciated the danger of working about the switch while in this condition, and, knowing of the defects and appreciating the danger, continued to work at the switch, he assumed the risk of injury by reason of such defect, and can not recover. *But if he knew of the defect aforesaid, if it existed, but by reason of his youth or from any other cause did not appreciate the danger therefrom by continuing to work, and so con-*

*tinued to work, then he did not assume such risk and hazard, and is not thereby barred from recovery by reason of having assumed the risk himself."*

These instructions are not incorrect statements of the law applicable to the facts of this case. It was a question for the jury to determine whether or not the danger was so obvious that Burns should be charged with contributory negligence in proceeding with his work with the defective appliances, and in reaching a conclusion on this question his age, experience and degree of intelligence were proper matters for consideration, when it is shown that he was an inexperienced youth. It was also proper to tell the jury that, in determining whether or not Burns assumed the risk of danger in proceeding in his work with the defective appliances, and in determining whether or not he appreciated the danger in so continuing the work, they should consider his youth and other causes for not appreciating the danger.

It must be remembered that these instructions were given in a case where the injured employee was a boy fourteen years of age and necessarily below the age of mature discretion. There was evidence to the effect that he notified the pit boss of the defect, and was told to go ahead with his work, and that the defects would be repaired in due time. It would establish an intolerable condition of the law to hold that the youth or inexperience of an employee should not be considered in determining whether or not he had assumed the risk of a danger caused by the negligent act of the employer, for it is of the very essence of the doctrine of assumed risk that the employee must have realized the danger to which he was exposed by the negligent act of his employer before he can be held to have assumed the risk of it. *Choctaw, O. & G. R. Co.* v. *Jones,* 77 Ark. 367; *Southern Cot. Oil Co.* v. *Spotts,* 77 Ark. 458.

The servant has a right also to rely upon the superior knowledge of the master, and to proceed upon the assurance that it is safe to do so, and that the defects will be repaired.

The correct rule is, we think, is stated in Shearman & Redfield on Negligence (vol. 1, § 215) as follows:

"There is no longer any doubt that where a master has expressly promised to repair a defect the servant does not assume. the risk of an injury caused thereby within such a period of time

after the promise as would be reasonably allowed for its performance, or, indeed, within any period which would not preclude all reasonable expectation that the promise might be kept."

The modification to instruction number eight, just quoted, especially criticised wherein it says that if Burns "by reason of his youth *or any other cause*" did not appreciate the danger, then he would not be deemed to have assumed the risk. It is argued that the jury might have undertsood this to mean that, even if by reason of his own negligence he failed to observe and realize the danger, he would not be deemed to have assumed the risk. We do not think the language is fairly open to that construction, when we consider that the court told the jury in several other instructions that there could be no recovery if Burns was guilty of negligence which contributed to his own injury.

The court refused to give the following instruction at appellant's request:

"3. You are instructed that if the evidence shows that it was the duty of Burns, after throwing the switch, to go into the Seventh North Entry and then up into the air course, so as to be out of danger in case of accident, and that, if he had done this, he would not have been injured, you will find for the defendant."

Appellant was clearly entitled to have the question specifically submitted whether or not Burns stationed himself in the place of safety where he was instructed to go; and if a correct instruction had been asked, it would have been error to refuse it. It is true that the court gave instructions in general terms submitting the alleged contributory negligence of the plaintiff, but when asked it should have given instructions submitting the alleged specific acts of negligence. *St. Louis & S. F. Rd. Co. v. Crabtree*, 69 Ark. 134. But this instruction was not a correct one. It plainly assumed that Burns did not go into the entry where he was instructed to go, instead of leaving that question to the jury, as it was a disputed one. A party can not complain of the failure of the court to instruct on a given point in a case unless he himself asks for a correct instruction. *Allison v. State*, 74 Ark. 444. Especially is this true where a correct instruction on the subject in general terms has been given, and the party is asking for a specific one.

Other refused instructions are fully covered by those given

by the court, and no error is found in that respect.

Appellant contends that the damages are excessive, but we conclude that the evidence was sufficient to sustain the assessment of damages in both cases. The boy was very painfully injured. The flesh and muscles were torn from the bone on one of his legs and his back and hips were bruised. He was on crutches for several months, and there is some evidence of a permanent injury. The physician who attended him testified that at the time of the trial he still observed a defect in his ankle, and thought he would be lame all his life. We can not say that this evidence did not warrant an assessment of $1500 damages. Nor was an assessment of $300 to the mother for expenses and loss of her son's services during minority excessive.

Judgment affirmed.