### MISSOURI, K. & T. RY. CO. v. BURTON.

(Court of Civil Appeals of Texas. Dallas. Dec. 20, 1913. Rehearing Denied Jan. 10, 1914.)

1. MASTER AND SERVANT (§ 221*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Where a servant requested his foreman to fix the valve on a steam boiler so that the pressure would not be dangerous in operating a steam drill, and the foreman promised to remedy the defect, the servant by continuing in the work did not assume the risk of injury; for, the work not being so dangerous that it would be against the policy of the law to permit the servant to continue, the master was lia-

ble for an injury occasioned by excessive steam pressure; the defect not having been remedied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–640, 642–645; Dec. Dig. § 221.*]

2. MASTER AND SERVANT (§§ 203, 227*)—INJURIES TO SERVANT—DEFENSES.

Contributory negligence and assumption of risk are separate defenses.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543, 668, 669; Dec. Dig. §§ 203, 227.*]

3. MASTER AND SERVANT (§ 234*)—INJURIES TO SERVANT—PROMISE TO REPAIR.

While the promise of a master to repair a defective appliance casts the liability for injuries upon the master, it does not relieve the servant from the duty to exercise reasonable care for his safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 684–686, 706–709; Dec. Dig. § 234.*]

4. TRIAL (§ 191*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In a personal injury action by a servant who was burned by steam when the hose conducting the steam to a drill blew off owing to the excessive pressure and the failure of the safety valve to work, it was not improper for the court to assume in its charge that the master was guilty of negligence in failing to keep the safety valve in order.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

5. APPEAL AND ERROR (§ 1064*)—INSTRUCTIONS—HARMLESS ERROR.

In a personal injury action by a servant, a charge that if the appliances with which the servant was at work were not reasonably safe, and if the servant failed to inform the master of that fact, or the master did not promise to repair them, "and" a person of ordinary care with knowledge of the defect would not have continued in the service, is not prejudicially erroneous, in the use of the word "and" instead of the word "or," as casting on the master a greater burden than the law requires by making it a condition precedent to recover that, in addition to the other circumstances, the danger must have been such that a reasonably prudent person would not have continued in the service.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

Appeal from District Court, Grayson County; W. J. Mathis, Special Judge.

Action by James W. Burton against the Missouri, Kansas & Texas Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

A. S. Coke, of Dallas, and Head, Smith, Maxey & Head, of Sherman, for appellant. Wolfe, Wood & Haven, of Sherman, for appellee.

TALBOT, J. This is an action brought by the appellee to recover of appellant damages for personal injuries. The defenses pleaded were a general denial, assumed risk, and that appellee's injuries, if any, were proximately caused and contributed to by appellee's own negligence and want of ordinary care and by that of his fellow servants. The case was tried before the court and a jury, and the

trial resulted in a verdict and judgment in favor of appellee for $4,000, and, appellant's motion for a new trial having been overruled, it appealed.

Appellee was in the employ of appellant, and on the 8th day of February, 1912, while working as a driller in appellant's rock quarry at or near Rich, in the state of Oklahoma, received the injuries of which he complains. Appellant had provided a boiler in which steam was generated and which by an iron pipe was conveyed to a point near where the work of drilling was being done. A rubber hose, several feet long, connected this iron pipe to the drill with which appellee was working, and while appellee was engaged in the performance of his duties the end of the rubber hose next to the drill blew off and appellee was scalded by the hot steam or water escaping therefrom and otherwise seriously injured, substantially as alleged in his petition. Appellant had permitted what is called the blow-off or pop-valve, attached to the boiler in question, to become so defective while in use that it would not properly operate, and would permit the steam in said boiler to gain a much higher pressure than was safe to work with. It was not safe to work with the drill when there was a steam pressure of over 90 or 95 pounds, and at the time the accident occurred the pressure was about 140 pounds. On the morning of and shortly before the happening of the accident, appellee discovered there was a steam pressure on the boiler of about 140 pounds. He believed this rendered the continuance of his work dangerous, and went to appellant's foreman in charge of the work and called his attention to the high pressure of steam and defective condition of the boiler and blow-off or pop-valve. The foreman assured appellee that it was not dangerous and directed him to proceed with his work, but promised appellee that he would have the boiler and blow-off or pop-valve repaired, and appellee, relying upon the superior knowledge of the foreman and his promise and assurance to repair the defective condition of the boiler and blow-off or pop-valve, returned to and continued to work with the drill. The defective valve was not repaired, and by reason of its condition and the excessive pressure of steam the rubber hose was caused to be blown off and disconnected from the drill and appellee injured.

There are but two assignments of error, and they complain of certain paragraphs of the court's charge. The first is that the court erred in charging the jury as follows: "Now bearing in mind the foregoing instructions, if you believe from the evidence that on or about February 8, 1912, plaintiff, while engaged in the discharge of his duties under his employment, was using a drill which was then and there propelled by steam generated by a boiler, and the blow-off or pop-valve attached to said boiler was defective and out of repair, and that by reason thereof plaintiff was injured, as alleged in his petition, and that such injuries, if any, were proximately caused by the defective blow-off or pop-valve, if you find from the evidence same was defective; and if you further believe from the evidence that said blow-off or pop-valve was not a reasonably safe appliance for plaintiff to do the work required of him under his employment, and that plaintiff, prior to his alleged injuries, informed defendant's foreman, R. M. Thacker, of the defective condition of said blow-off or pop-valve, and that the said R. M. Thacker, as such foreman, was charged with the duty of repairing said blow-off or pop-valve, or causing same to be repaired, and that he promised plaintiff to repair said blow-off or pop-valve or have same repaired, and that plaintiff, believing that said R. M. Thacker would have same repaired, continued to work at said employment, relying upon said promise to repair, if any, and that said R. M. Thacker failed to repair said blow-off or pop-valve; and if you further believe from the evidence that under all the circumstances a person of ordinary care would have continued with the knowledge of the defect and danger; and if you further believe from the evidence that the defective condition of said blow-off or pop-valve (if you find it was so defective as that it was not a reasonably safe appliance for plaintiff to use in the performance of his work) was the direct and proximate cause of plaintiff's injuries, if any he received—then you will find for the plaintiff and assess his damages under instructions hereinafter given you, unless you find for defendant under other instructions that will be given you in charge by the court."

It is asserted that this charge is erroneous because: (1) It permits a recovery by appellee if his injuries were caused by reason of the blow-off or pop-valve being defective and not reasonably safe, regardless of whether this condition was due to any negligence on the part of appellant; (2) it permitted appellee to recover, regardless of whether appellant knew, or by the exercise of ordinary care could have known, of the defective or unsafe condition of the blow-off or pop-valve in time by the exercise of ordinary care to have remedied the defect, and regardless of whether appellant could have reasonably anticipated that an employé might be injured by the use of the appliance in its then condition; (3) the charge is on the weight of the evidence, in that it virtually instructs the jury that, if the blow-off or pop-valve was defective, the same would constitute negligence on the part of appellant.

[1] We are of opinion there was no material error in the charge. Where the servant complains to the master of a defect in the tool or implement furnished for his use and

receives a promise, upon which he relies, that it will be removed, it is generally held that there is no assumption by the servant of the risk by a mere continuance of the use of the defective implement or appliance. This is so at least until a reasonable time for the removal of the defect has elapsed after the promise. Our decisions, and it seems the weight of authority, treat the promise of the master to repair as an implied request to the servant to continue in the service until the necessary repairs can be made, and as an assumption of the risk. Some, however, seem to regard the promise as tending to relieve or exempt the servant from the charge of contributory negligence in exposing himself to a known danger. The reason why a promise to repair modifies the rule which ordinarily charges the servant with risks arising or resulting from defects of which he has knowledge is that the complaint and promise to repair "leave the risk where the duty is, upon the master. As the risks to be incurred by the servant, under such circumstances, are not assumed by him but by the master, the loss must fall upon the latter, unless the danger to the servant is so great that the policy of the law will forbid persons even under such a promise to take it and then seek compensation in the courts, or unless, having taken it, the servant, by his own carelessness in performing his work, has increased the risk and contributed to his own injury."

[2, 3] Contributory negligence and the assumption of risk are regarded and treated in this state as distinct defenses, and, although the promise to repair may be given and the risk from the use of the defective appliance thereby assumed for a reasonable time by the master, yet the law does not relieve the servant of the duty resting upon men generally of using reasonable care for his safety. Railway Co. v. Bingle, 9 Tex. Civ. App. 322, 29 S. W. 674; Railway Co. v. Kern, 100 S. W. 971. But where the master has promised to remove the defect and no definite time is named in the promise for so doing, the assumption of the risks by the master continues for a reasonable time. In treating of the subject in Railway Co. v. Holman, 90 Ark. 555, 120 S. W. 146, the Supreme Court of Arkansas, speaking through Mr. Justice Wood, said: "The effect of a promise to repair by the master, and the continuance in his service by the servant, in reliance upon the promise, is to create a new stipulation whereby the master assumes the risks independent during the time specified for the repairs to be made. Where no definite period is specified in which the given defects are to be remedied, the suspension of the master's right to avail himself of the defense of assumption of the risk by the servant continues for a reasonable time. 1 Labatt, Master & Servant, §§ 424, 425, and notes thereto." It is further said, in the case referred to, that "the promise of restoration by the master to secure the continuation of the service of his employés is a confession of a breach of duty which rests solely with him, and which he alone can and should correct. Out of this contractual relation the law declares that, for a reasonable time, the burden of the assumption of risks and the responsibility for any injury resultant to the careful servant by reason alone of the defective conditions is on the master, where it belongs, for he is in the wrong." In Brouseau v. Kellogg Switchboard & Supply Co., 158 Mich. 312, 122 N. W. 620, 27 L. R. A. (N. S.) 1052, the rule is expressed in the following language: "If the employé, after notifying the employer of a dangerous defect, is induced to continue his work by the employer's promise to remove the defect, his implied contract to assume the risk of such defect is suspended for a reasonable time, and the employer impliedly contracts to assume the risk of injury therefrom himself." Likewise, in Greene v. Minneapolis & St. L. Ry. Co., 31 Minn. 248, 17 N. W. 378, 47 Am. Rep. 785, it is said: "If the emergencies of a master's business require him temporarily to use defective machinery, we fail to see what right he has in law or natural justice to insist that it shall be done at the risk of the servant and not his own, when, notwithstanding the servant's objection to the condition of the machinery, he has requested or induced him to continue its use, under a promise thereafter to repair it." Some of the many other cases announcing the rule stated and illustrative thereof follow: Dalhoff Const. Co. v. Luntzel, 82 Ark. 82, 100 S. W. 743; Western Coal & Mining Co. v. Burns, 84 Ark. 74, 104 S. W. 535; Hough v. Texas & Pacific Ry. Co., 100 U. S. 225, 25 L. Ed. 612; Altman v. Schwab Mfg. Co., 54 Misc. Rep. 243, 104 N. Y. Supp. 349; Holmes v. Clark, 6 Hrl. & N. 349; 30 Law J. Exch. 135; Eureka Co. v. Bass, 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152.

It is said the rule is a necessary corollary of the doctrine that the defense of assumed risk rests on contract, and that the most logical reason for the rule is that, under such circumstances, it must be taken as understood between the master and servant that the continued use in the then condition of the instrumentality, being for the convenience and purposes of the master, is to be at his risk, and not at the risk of the servant (Schlitz v. Pabst Brewing Co., 57 Minn. 303, 59 N. W. 188); that when the master has knowledge of the defects, and promises to repair the same, he impliedly requests the servant to continue to work; and that he (the master) will take upon himself the responsibility of any accident that may occur during the period (Chicago Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573, 36 N. E. 572). It seems to follow, therefore, as contended by appellee, that when a servant is

put to work with an appliance or instrumentality which, from any cause, becomes so defective as not to be reasonably safe, and such condition is by him reported to the master, who induces the servant to continue to use the appliance in its defective condition by a promise to repair, and the servant is injured by reason of such defective condition within a reasonable time and before such repairs are made, the real question is not whether the master has been guilty of negligence in furnishing or failing to keep the appliance in repair, but it must be taken as having been understood between them that the continued use of the appliance in its then condition being, as is said in one of the decisions cited, for the purpose and convenience of the master, is to be at his risk and not at the risk of the servant. Mr. Cooley, in his work on Torts (page 1156), says: "It is also negligence for which the master may be held responsible, if, knowing of any peril which is known to the servant also, he fails to remove it in accordance with assurances made by him to the servant that he will do so. * * * If the servant, having the right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good."

The essential or controlling feature of appellee's case was the defective condition of the blow-off or pop-valve, the report of its condition to appellant, and its promise to repair. It was undisputed that appellee knew of the defective condition of the valve, and his continued use of it in that condition without appellant's promise to repair would doubtless have been an assumption of the attendant risk regardless of whether it was negligent for him to do so or not. Railway Co. v. Bingle, supra. The charge of the court under consideration does not, as will be observed, specifically require, as must be done ordinarily in a personal injury suit, that the jury find, in order to return a verdict in favor of the appellee, negligence on the part of the appellant. The jury were required to find, however, that the blow-off or pop-valve in question was defective; that it was not reasonably safe for use; that appellee informed appellant's foreman, R. M. Thacker, of such condition of the valve; that said foreman was charged with the duty of repairing the valve and promised appellee that he would repair it; that appellee, believing and relying on said promise, continued to work; that said foreman failed to make the repairs; that, under the circumstances, a person of ordinary prudence would have continued to work with the defective valve; and that the defective valve was the proximate cause of appellee's injuries. The verdict of the jury necessarily embraces findings

to the effect that all of the foregoing facts existed, and such findings include, it occurs to us, every fact necessary to be found to entitle appellee to a recovery. The authorities from which we have quoted and cited establish the law, under the facts of this case, to be that appellant, by promising to repair the defects which were called to its attention by appellee, impliedly contracted to and did assume the risk of injury therefrom. The question was not then whether or not appellant had failed to exercise ordinary care to furnish appellee an appliance which was reasonably safe for the use he was required to make of it or had failed to use such care to keep it in a reasonably safe condition, but the question was whether or not appellant had been informed by appellee that the blow-off or pop-valve furnished was defective and unsafe; that it had promised to repair it and had failed to do so, and had thereby impliedly contracted with appellee to assume the risk of his being hurt by the use of the blow-off or pop-valve pending a reasonable time for the repairs to be made. That appellant did so contract is affirmed by the verdict. There is no contention that the danger to appellee from the continued use of the appliance "was so great that the policy of the law would forbid him even under the promise to repair to take it and then seek compensation in the courts." Nor is it contended that the appellee, by his own carelessness in performing the risk in which he was engaged, increased the risk and contributed to his own injury. Therefore, as the risks to be incurred by the appellee in undertaking to perform the service required of him with the defective pop-valve were not assumed by him, but by the appellant, the loss sustained by appellee should fall upon the former, and the court's charge in authorizing a verdict in favor of appellee for the damages sustained by him, in the event the jury found the facts enumerated therein to exist, was, we think, correct. It presented, it seems to us, the theory of the case relied on by appellee and which the evidence tended to establish. Appellee's right to recover was not, as we understand the theory upon which the case was tried, claimed upon the proposition that the blow-off or pop-valve attached to the boiler was defective and dangerous when first placed in appellee's possession for use, but upon the charge that the valve, after appellee began to operate the drill, became defective and appellant failed and neglected to repair it after complaint and a promise, upon which appellee relied, to do so. The issue arising upon this phase of the case was, in the charge under consideration, fully and fairly submitted and the issue determined in favor of appellee.

[4] In so far as negligence on the part of appellant in failing to exercise ordinary care to keep the valve in a reasonably safe condition may be involved, the same was so ap-

parent and so conclusively established that the assumption of it in the court's charge was authorized, or the failure to submit it as an issuable fact to the jury under the circumstances of the case resulted in no harm to appellant. We shall not undertake to detail the evidence. It was somewhat conflicting upon the issues as to whether or not appellee complained to appellant's foreman of the defective condition of the blow-off or pop-valve and as to whether or not appellant promised to remove the defect, but that the valve was out of fix, defective, and would not register properly, and that by reason thereof the boiler was carrying too much steam and was dangerous, and that appellant's foreman, Thacker, was aware of all of these things in time to have repaired the valve and failed to do so, and that as a consequence thereof appellee was injured, appears beyond controversy. As has been seen, however, from the above quotation, Mr. Cooley says that "if the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the *master is not in the exercise of ordinary care* (italics ours), unless or until he makes his assurances good."

[5] The second assignment of error complains of the following paragraph of the court's charge: "On the other hand, if you find and believe from the evidence that the machinery and appliances with which plaintiff was at work were reasonably safe for the plaintiff to discharge the duties required by him, or if you so believe that the machinery and appliances with which plaintiff was at work were defective, out of repair, and not reasonably safe for plaintiff to perform his work because of the blow-off or pop-valve being defective or out of repair, but if you do not believe that plaintiff informed defendant's said foreman of the condition of said blow-off or pop-valve, or, if he did, that defendant's foreman did not promise to repair said blow-off or pop-valve, and if you do not believe that a person of ordinary care would have continued in the service with the knowledge of the defect and danger, then you will find for the defendant."

All of the propositions advanced under this assignment have been disposed of by what we have already said, except the first. This proposition is that the charge here complained of "announces an incorrect doctrine and places upon appellant a greater burden than the law requires, in that it instructs the jury, in substance, that, in the event they should find the blow-off or pop-valve defective and unsafe, they must further find that a person of ordinary care, knowing the defect and danger, would have continued in the service, before they can return a verdict in favor of appellant." If this charge is subject to any

criticism, it is in the use of the conjunctive "and," instead of the disjunctive "or," in the last clause of the paragraph. The error, however, if error, is not believed to be an affirmative one. Railway Co. v. Hill, 95 Tex. 629, 69 S. W. 136; Railway Co. v. Haberlin, 104 Tex. 50, 133 S. W. 873. If we are mistaken in this, the error is not of such a character as probably influenced the jury in arriving at their verdict to the prejudice of appellant.

Our conclusion upon the whole record is that the trial court committed no material error in instructions given the jury, and that the evidence sustains the verdict.

The judgment is therefore affirmed.