## PEKIN COOPERAGE COMPANY *v.* DUTY.

### Opinion delivered October 13, 1919.

1. FOREIGN CORPORATIONS—REGULATION, LIMITATION, AND LIABILITY.
   —Under § 11, art. 12, of the Constitution of 1874, the regulations,
   limitations and liabilities imposed upon domestic corporations
   constitute the measure of the liabilities of foreign corporations.

2. SAME—LOCAL OR COUNTY RESIDENCE.—The statutes of this State
   allowing foreign corporations to do business in this State, and
   permitting them, after complying with the statute, to sue and to
   be sued in the courts of this State, does not confer a local or
   county residence upon them.

3. SAME—SERVICE UPON.—An action may be brought in Independ-
   ence County against a foreign corporation for damages for per-
   sonal injuries occurring at defendant's plant in Pike County, and
   service is valid which is had upon the agent of defendant com-
   pany at its place of business in Pike County.

4. SAME—SERVICE UPON—VALIDITY OF ACT.—Section 834 of Kirby's
   Digest, providing for service of summons upon foreign corpora-
   tions, *held* valid.

5. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE APPLIANCE
   —COMPLAINT—PROMISE TO REPAIR.—A servant does not assume
   the risk of danger from a defect in machinery, when he has
   complained of it and relies upon the express promise of the master
   to repair the defect, unless the danger from continuing at work
   is so imminent or obvious, that no prudent person would do so.

6. SAME — SAME—SAME.—Plaintiff, working in a stave mill, was
   operating a jointer machine and observed a defect therein; he
   notified the manager who told him to continue until noon, when
   repairs would be made; later he saw the employee whose duty it
   was to make repairs and told him of the defect; his reply was
   for plaintiff to continue work until noon when he would make re-
   pairs. Before noon plaintiff was injured. *Held*, although plain-
   tiff knew the danger, that it was for the jury, under the cir-
   cumstances, to say whether or not plaintiff had a right to rely
   upon the superior knowledge and judgment of the foreman, and
   continue to work for the short time which would elapse until the
   noon hour.

   *Held*, also, under the evidence, that the manner of plaintiff's
   injury was not conjectural; that plaintiff discovered the defect by
   seeing a piece of wood on the floor which had come through a
   slit in the sheathing about the jointer machine, and *held*, the
   jury was warranted in finding that plaintiff's eye was injured by
   being struck by a small particle of wood, which escaped through
   the slit or opening.

7.  SAME — SAME — SAME.—Under the facts as stated above, the duty rests upon the plaintiff to prove by a preponderance of the testimony that he requested that repairs be made, that they were promised and that he continued at work because of the promise.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; affirmed.

*T. D. Wynne* and *John B. & J. J. McCaleb,* for appellant.

1. The court erred in overruling defendant's motion to dismiss. The act of March 18, 1889, is violative of our State Constitution and the 14th Amendment. Art. 12, § 11, Const. 1874. Kirby's Digest, section 834, violates article 12, section 11, and is a discrimination against foreign corporations, and the Independence Circuit Court had no jurisdiction.

2. The act of 1889 violates the 14th Amendment U. S. Constitution. 125 U. S. 181. A foreign corporation is a citizen within the meaning of the clause. 204 U. S. 103; 216 *Id.* 400, 418; *Ib.* 419.

3. A verdict should have been directed for defendant, as plaintiff under the law and evidence assumed the risk. 4 Labatt on Master & Servant, § 1342; 95 Wis. 6; 70 N. H. 390; 7 S. W. 420; 81 Ark. 343; 116 *Id.* 56.

4. The court erred in its instructions to the jury, Nos. 1, 2 and 3 given. Cases *supra.*

*Pace & Davis,* for appellee.

1. The court did not err in refusing to dismiss the suit. Due service was had on defendant in Pike County as prescribed by law. Kirby's Digest, § 834; Act March 18, 1889; art. 12, § 11, Const.; 114 Ark. 161; 76 *Id.* 4; 64 Fed. 165, 177; 143 U. S. 168; 75 *Id.* 168; 153 *Id.* 776.

2. There was no error in refusing the peremptory instruction for a verdict, as plaintiff did not assume the risk. He had complained of the defect and the company had promised to remedy it. 97 Ark. 553; 84 *Id.* 74; 88 *Id.* 28.

3.    There was no error in the instructions given or refused.  Cases *supra.*

HART, J.    W. M. Duty was injured on the 29th day of May, 1918, at the mill plant of the Pekin Cooperage Company at Glenwood, Pike County, Arkansas, while he was operating a stave jointer machine.    This machine is used to cut down and smooth the edges of the staves so that when they are placed in a barrel they will fit so compactly as to hold liquids.    Duty claims that the accident occurred because the wood rim which incased the wheel of the machine was so defective that it permitted splinters or parts of the staves which were being cut down to fly out of the machine and strike him in the eye and destroy his eyesight.    He sued the company for damages and recovered judgment.    The case is here on appeal.

The suit was brought and the case was tried in the circuit court of Independence County, Arkansas.    Service was had upon the agent of the company at its place of business in Pike County, Arkansas, by virtue of section 834 of Kirby's Digest, which is as follows:

"Service of summons and other process upon the agent designated under the provisions of section 834 at any place in this State shall be sufficient service to give jurisdiction over such corporation to any of the courts of this State, whether the service was had upon said agent within the county where the suit is brought, or is pending, or not.    Act March 18, 1899."

The defendant filed a motion to quash the service of summons and to dismiss the complaint on the ground that the section just referred to under which service of process was had was in violation of section 11, article 12, of the Constitution of the State of Arkansas, which is as follows:

"Foreign corporations may be authorized to do business in this State under such limitations and restrictions as may be prescribed by law.    Provided, that no such corporation shall do any business in this State except

while it maintains therein one or more known places of business and an authorized agent or agents in the same, upon whom process may be served; and as to contracts made or business done in this State they shall be subject to the same regulations, limitations and liabilities as like corporations of this State, nor shall they have power to condemn or appropriate private property."

(1-2) Under this clause of the Constitution the regulations, limitations and liabilities imposed upon domestic corporations constitute the measure of the liabilities upon foreign corporations. To illustrate, as held in the *American Smelting & Refining Co.* v. *Colorado*, 204 U. S. 103, the State could not impose higher taxes upon foreign corporations than upon domestic corporations. Every State, however, has complete control over the remedies which it provides its suitors. Foreign corporations have their legal existence and are located within the boundaries of the State under whose laws they are organized. Under our statutes a foreign corporation can not do business here without subjecting itself to the jurisdiction of our courts and our statute has provided a method of procedure in such cases. Our statute has not, however, given a local or county residence to a foreign corporation. This court has expressly held that the statute allowing foreign corporations to do business in this State and permitting them after complying with the statute to sue and to be sued in the courts of this State does not confer a local or county residence upon them. *American Hardwood Lbr. Co.* v. *Ellis & Co.*, 115 Ark. 524.

(3) In that case appellant was a Missouri corporation, and had complied with the laws of the State in regard to transacting business here. The corporation maintained an office in Saline County, Arkansas, which it designated as its principal place of business, and it designated an agent there upon whom service of summons and other process might be had. Appellees were engaged in business in Calhoun County, in this State, and instituted an action against appellant in the circuit court of that county to recover an amount alleged to be due them by

appellant for certain carloads of lumber. Summons was issued and directed to the sheriff of Saline County and served upon the designated agent of appellant there. The court held that the action, being a transitory one, could be maintained in the courts of any county in the State, and that the service was valid. That case controls here, and the court properly denied the motion of defend-ble for the jury to ascertain from the proof whether or ant to dismiss the complaint.

(4) It is also contended that the act in question is in violation of the Fourteenth Amendment to the Constitution of the United States. What we have said above applies with equal force to this objection. The statute does not take away or impair any right of the defendant. As above stated, it only fixed the forum in which it might sue or be sued.

The principal contention of the defendant is, that the court erred in not directing a verdict in its favor. It is contended (*first*) that the plaintiff assumed the risk resulting in his injury and (*second*) that it was impossible for the jury to ascertain from the proof whether or not the injury complained of was caused on account of the defect in the casing of the jointer machine, or whether it resulted from particles of wood flying from the ma-chine in the ordinary course of its operation.

According to the evidence adduced by the plaintiff, he had been in the employment of the defendant for many years and knew and appreciated fully the danger from operating a jointer machine. A jointer machine is five or six feet in diameter and in appearance somewhat like the face of a large clock. The one in question had eight knives projecting from the face of the machine which re-volved with great rapidity when the machine was in use. The staves were piled to the left of the machine, and the operator stood on the left hand side of it. The staves were placed by the operator in a clamp in front of the machine and by pressing the pedal they were thrown against the face of the machine where they were shaved or jointed by the revolving knives. The rapidly revolv-

ing knives created a current of air which blew most of the shavings and splinters through a slot and then up a chute. There was a casing around the machine to keep the splinters or shavings from flying in the face of the operator.

About 10 o'clock on the morning of the injury, the plaintiff discovered a little piece of splinter lying on the floor and upon picking it up, saw it had come out of the machine by reason of a broken place in the casing about six or eight inches long. He went to the manager and asked him to have the machine repaired before he operated it any longer. The manager asked him to continue at work until noon, and said that he would have the machine repaired at that time. The plaintiff started to work again, and in a little while the brother of the manager, whose duty it was to actually make the repairs, came along and the plaintiff asked him to repair the machine. He was again told that it was nearly noon and for him to go ahead and work at the machine until that time when it would be repaired. The plaintiff continued at work, and in a few minutes something struck him in the eye and pained him severely. He did not see the particle which struck him, but it began to pain him severely at once. The injury finally resulted in the loss of his eye. Previous to this time the plaintiff had lost his other eye, so that the result of this accident rendered him wholly blind.

On the part of the defendant, it was shown that no promise to repair was made and that the plaintiff knew and fully appreciated the danger of continuing at work with the defective machine. It also appeared from its testimony that it was a matter of conjecture as to whether the particle which struck the plaintiff in the eye resulted from the defective condition of the casing, or from the ordinary operation of the machine and was therefore a risk which he assumed.

(5) It is well settled that the servant does not assume the risk of danger from a defect when he has complained of it and is relying upon the express promise of the master to repair the defect, unless the danger from continuing at work is so imminent or obvious that no prudent

person would do so. *Western Coal & Mining Co.* v. *Burns,* 84 Ark. 74; *Marcum* v. *Three States Lumber Co.,* 88 Ark. 28; and *Headrick* v. *H. D. Williams Cooperage Co.,* 97 Ark. 553.

(6) In the case at bar the plaintiff fully realized the danger of continuing at work with the defective machine. He says he saw a small particle of wood lying on the floor, and knew at once that there must be a defect in the machine. He examined it and found that a piece about eight inches long had been broken off of the casing and that the particle of wood had escaped through the opening. He went at once to the manager and notified him of the defect and asked him to have the machine repaired. The manager told him to continue at work until noon, and that he would then have the machine repaired. He went on back to work, and in a few minutes the employee whose duty it was to repair the machine came along. He showed him the defect and asked him to repair it. He was told again to continue to work at the machine until noon, and that it would then be repaired. It was only a short time until the noon hour, and while it was true that the plaintiff knew and realized the dangers from working with the defective machine, yet we think, under the circumstances, it was a question for the jury to say whether or not he had a right to rely upon the superior knowledge and judgment of the foreman and continue to work for the short time which would elapse until the noon hour.

Neither do we think it a matter of conjecture as to the manner in which the plaintiff was hurt. The plaintiff first discovered the defect in the machine by seeing a small particle of wood on the floor under the machine. This caused him to examine the machine, and he found the defect in the casing.

From the attendant circumstances, the jury was warranted in finding that a small particle of wood escaped through this opening and struck the plaintiff in the eye, resulting in the destruction of his eyesight.

It is true there would be some dust flying about when there was no defect in the machine. But, according to the testimony of the plaintiff, there would be no particles of wood flying from the face of the machine which would likely destroy the eyesight when the casing was in perfect condition.

Therefore, we are of the opinion that when the testimony of the plaintiff is given its strongest probative force the jury was warranted in finding that a particle of wood escaped through the opening in the defective casing and struck the plaintiff in the eye, thereby destroying his eyesight.

(7) The next error assigned is that the court gave instruction No. 1, which is as follows:

"While the servant assumes all the ordinary risks incident to his employment, yet a duty rests upon the company to commit no act of negligence whereby he may suffer injury and to exercise ordinary care to protect him from danger, and in this case if you find from a preponderance of the evidence that the plaintiff, W. M. Duty, was in the employ of the defendant, Pekin Cooperage Company, operating a stave jointer wheel, and that a piece of the wooden rimming that incased the wheel came off, making the wheel defective and increased the danger of its operation, and that plaintiff notified defendant, or one of its agents whose duty it was to keep defendant's machinery in repair, of the condition of the jointer wheel and requested that the same be repaired, and that the said agent of the defendant told him to operate the wheel in its defective condition until noon, at which time he would have it repaired, and further find that the plaintiff relied upon said promise, if any, and continued to operate said wheel and was injured on account of the defective condition of the wheel, as aforesaid, and that the danger arising from its continued operation in its defective condition was not so obvious, imminent and glaring that an ordinarily prudent person would not have continued in the work, and that the defendant thereby failed to exercise ordinary care to protect plain-

tiff from danger and that its failure to repair the machine was the proximate cause of the injury, and that the plaintiff at the time was exercising ordinary care for his own safety, you will be authorized to find for the plaintiff and assess his damages at such a sum as will, from the evidence, fully compensate him for his injuries.''

It is claimed that this instruction assumes as a matter of fact that a promise to repair was made and that the inducing cause of plaintiff continuing at work was the assumed promise.

It is true the burden was on the plaintiff to show not only a promise to repair, but to show that he continued at his work for the reason that the promise to repair was made. The plaintiff so testified, and the instruction in question tells the jury that before the plaintiff is entitled to recover he must show by a preponderance of the evidence that he requested the machinery to be repaired and that the agent of the defendant told him to operate the wheel in its defective condition until noon and that he would then have it repaired and that it must further find that the plaintiff relied upon such promise, if any, and continued to operate the machine in reliance thereon and was injured on account of the defect in the machine.

It is also urged by counsel for the defendant that the instruction is erroneous because it ignores the defense of assumed risk and that the injury might have been caused by reason of the fact that the foreign particles came from some other part of the machinery than the defective rim.

We do not think the instruction is open to that objection. It is apparent from reading it that the question of assumed risk was submitted to the jury and the jury was also required to find that the injury resulted from the defective casing before the plaintiff was entitled to recover. Other instructions were given by the court clearly submitting to the jury the question of assumed risk and explaining that doctrine to the jury. The instruction plainly told the jury that it must find by a pre-

ponderance of the evidence that the plaintiff was injured on account of the defective condition of the wheel.

Other instructions were given by the court which plainly told the jury that the plaintiff was not entitled to recover unless the injury resulted from the defective condition of the rim.

The jury was also instructed that, if it believed from the evidence that the injury complained of did happen or might have happened from other causes than the opening in the rim of the casing, the plaintiff was not entitled to recover.

We find no prejudicial error in the record and the judgment must be affirmed.