ARK-LA ELECTRIC COOPERATIVE, INC., v. ARKANSAS PUBLIC SERVICE COMMISSION.

4-7883                                               194 S. W. 2d 673

Opinion delivered May 13, 1946.
Rehearing denied June 17, 1946.

*Sherrill, Cockrill & Wills,* for appellant.

*P. A. Lasley,* for appellee.

MINOR W. MILLWEE, Justice. The question for determination is whether appellant, Arkansas-Louisiana Electric Cooperative, Inc., is a public utility and, therefore, subject to regulation and supervision by the Arkansas Public Service Commission.

The Department of Public Utilities was created as a separate department of the Arkansas Corporation Commission by Act 324 of 1935, and the two agencies were consolidated as the Arkansas Public Service Commission by Act 40 of 1945. The agency existed as the "Department of Public Utilities" when the instant proceedings were determined by that body, and appellee, Arkansas Public Service Commission, will be hereinafter referred to as "Department," and appellant will be designated "Ark-La."

A brief history of the proceedings leading to the present controversy seems appropriate. Ark-La is a Louisiana corporation organized under Act No. 266 of the Louisiana Statutes for 1940, which provides for the creation, operation and regulation of electric cooperatives in that state. On August 8, 1941, Ark-La secured authority from the Secretary of State to transact business in this state as a foreign corporation, after complying with the provisions of § 2247 of Pope's Digest. In its application for such authority, Ark-La stated that it was a non-profit corporation organized for the purpose of producing, transmitting, and selling electric power on a non-profit basis.

On December 26, 1941, Ark-La filed its petition with the Department alleging it was "a non-profit electric cooperative corporation composed of five Arkansas rural electric cooperatives and five Louisiana rural electric cooperatives," and had a contract to supply 32,500 kw. capacity of electricity to the aluminum plant to be built

by the Defense Plant Corporation near Lake Catherine, Arkansas. The petition prayed that the Department authorize the construction and operation by Ark-La of, (1) a transmission line from the aluminum plant site near Lake Catherine to the Arkansas-Oklahoma line near Fort Smith, Arkansas; (2) a steam generating plant of 45,000 kw. capacity on the Ouachita River; (3) transmission lines to inter-connect the proposed steam generating plant with a similar plant to be built by the Defense Plant Corporation and to inter-connect with the transmission line from Grand River dam; and (4) all other transmission lines necessary to serve electric power to rural electric cooperatives that are members of Ark-La.

Two of the present utility appellees intervened in opposition to the Ark-La application. After a hearing, the Department withheld authority to construct a generating plant and lines extending therefrom to the aluminum plant. Authority to construct and operate transmission lines necessary to serve electric power to the rural electric cooperative members of Ark-La was denied, but without prejudice to the right to renew such application whenever the applicant was in position to furnish more accurate information as to the facilities it planned to construct and the service it proposed to furnish. A certificate of convenience and necessity to construct and operate the transmission line from the aluminum plant site to the Oklahoma line near Fort Smith, Arkansas, was granted. The opinion of the Department clearly indicates that this certificate was granted against its own judgment, and under a virtual directive from those federal agencies charged with the production of materials vital to the prosecution of the war and the national defense. The opposing utilities did not appeal from the order of the Department granting the certificate of convenience and necessity, and Ark-La has not renewed its application for a certificate to serve its own rural cooperative members. The transmission line was constructed and the defense plant was being served by Ark-La when the instant proceedings were instituted.

On December 7, 1943, appellees, Arkansas-Missouri Power Corporation, Southwestern Gas & Electric Company, Arkansas Power & Light Company, and Oklahoma Gas & Electric Company, all public utilities operating in this state, filed their complaint with the Department under § 17 (a) of Act 324 of 1935 (§ 2080, Pope's Digest), alleging that Ark-La was doing business in the State of Arkansas as a public utility and, therefore, subject to regulation by the Department under Act 324 of 1935. The utilities prayed that the Department require Ark-La to comply with the terms of the Act and that it be subjected to complete regulation by the Department.

Ark-La filed its answer and motion to dismiss contending that the utility appellees were unauthorized to complain to the Department, and that the issues raised by the complaint were beyond the jurisdiction of the Department to determine. Ark-La also contended that it was a cooperative, non-profit, membership corporation and not subject to regulation by the Department; that it served only the Defense Plant Corporation, one of its members, and contemplated service to its rural cooperative members when materials became available; and was not operating as a public utility.

After a hearing on November 23, 1944, a majority of the commissioners, with Chairman Hathcoat dissenting, issued an order in which Ark-La was found to be a public utility, subject to jurisdiction of the Department, and was directed to comply with the regulatory provisions of Act 324 of 1935. Pursuant to the provisions of § 2097 of Pope's Digest, Ark-La filed its petition in the Pulaski Circuit Court to review and vacate the order of the Department. This appeal is prosecuted from the judgment of the circuit court affirming the order of the Department.

In determining whether the Department has regularly pursued its authority in fixing the status of Ark-La as that of a public utility, it will be necessary to consider the extent of Ark-La's corporate powers while operating as a foreign corporation in this state. Act 266 of the

State of Louisiana for 1940, under which Ark-La was organized, is designated by § 30 as the "Electric Cooperative Act." The act is entitled, in part, "An Act relating to cooperative, non-profit, membership corporations organized to engage in electrification . . ." The act contains many identical and similar provisions to be found in our Act 342 of 1937 which is designated as the "Electric Cooperative Corporation Act," and is entitled "An Act Relating to Cooperative, Non-Profit, Membership Corporations Organized to Engage in Rural Electrification."

It cannot be denied that the powers granted Ark-La while operating in the State of Louisiana under Act 266, *supra*, are somewhat broader than those extended to rural electric cooperatives organized in this state under Act 342. Under the Arkansas act a cooperative may serve its members only, while under the Louisiana act, power is granted the cooperative to serve, in addition to its members, governmental agencies, political subdivisions and "other persons not in excess of ten per centum (10%) of the number of its members." The field of operation of a cooperative organized under the Louisiana act is not specifically confined to rural areas as is the case of a cooperative organized under our Act 342, which defines a rural area as any area not included within the boundaries of any city or town with a population of more than 2,500.

The appellees, to sustain the order of the Department, earnestly insist that when Ark-La entered this state as a foreign corporation, it brought with it all the charter powers granted it by the State of Louisiana, and that there is nothing in either our laws, or policy, to prevent the exercise of such powers in this state. If appellees are correct in this contention, and Ark-La has the power to serve non-members and non-rural areas in this state, a right denied a cooperative by our statute, then the determination of Ark-La's status as a public utility by the Department must be upheld.

The rule generally applicable is stated in 23 Am. Jur., Foreign Corporations, § 91, as follows: "Although the organic power of a foreign corporation depends upon the law of the state from which its existence is derived, in the exercise of such power in another jurisdiction the corporation must conform to the local laws and public policy. The validity and effect of its acts in states other than the state of incorporation, even though such acts are within its charter, must depend upon the law of the jurisdiction in which such exercise takes place and in which such acts are done. Its submission to do business within the state is not by right, but by comity only, and it is, in respect of business done within the state, generally subject to, and bound by, the local laws and unable to exercise powers or perform acts, whether authorized by its charter or not, which are contrary thereto." A similar statement of the rule is found in Fletcher Cyclopedia, Corporations, (Perm. Ed.), Vol. 17, § 8344, as follows: "Corporations coming into a state as a matter of comity become subject to the state's laws, and to the same restrictions and duties as corporations formed in the state. They have no authority to do any act or transact any business which is prohibited to domestic corporations of like character by the constitution, laws or policy of the state, anything in the charters of the foreign corporations to the contrary notwithstanding. If their charters contain grants of powers not allowed by the laws of such state, the grants will be treated simply as if they had not been made."

We find this rule embodied in the fundamental law of this state. Section 11, Art. XII of the Constitution of 1874 is as follows: "Foreign corporations may be authorized to do business in this state under such limitations and restrictions as may be prescribed by law. Provided, that no such corporation shall do any business in this state except while it maintains therein one or more known places of business and an authorized agent or agents in the same upon whom process may be served; and, as to contracts made or business done in this state, they shall be subject to the same regulations, limitations

and liabilities as like corporations of this state, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this state, nor shall they have power to condemn or appropriate private property." In *Woodson* v. *State,* 69 Ark. 521, 65 S. W. 465, Mr. Justice RIDDICK, commenting on this clause of our constitution, said: "It will be seen from this section of our constitution that the legislature has no power to give a foreign corporation greater powers, privileges or franchises than may be exercised by like domestic corporations." This court has construed this section to mean what it plainly says, and a foreign corporation admitted to do business in this state is subject to the same regulations, limitations, and liabilities as like corporations of this state and shall exercise no greater powers than may be exercised by like domestic corporations. *Railway Co.* v. *Gill,* 54 Ark. 101, 15 S. W. 18, 11 L. R. A. 452; *Western Union Teleg. Co.* v. *State,* 82 Ark. 309, 101 S. W. 748, 12 Ann. Cas. 82; *Pekin Cooperage Co.* v. *Duty,* 140 Ark. 135, 215 S. W. 715.

Is Ark-La a "like corporation" to a cooperative organized under Act 342 of 1937, within the meaning of the aforementioned provision of our constitution? The Louisiana act, under which Ark-La was organized, and Act 342, *supra,* both provide for the organization of "cooperative, non-profit, membership corporations." The provisions of the two acts governing the admission, rights and duties of members of a cooperative are practically identical. Likewise the disposition of corporate revenues and refunds to members on a patronage basis are provided for in both acts. License fees are payable in lieu of other excise taxes, and organizations under each of the acts are exempt from the "Securities Act" on certificates of membership and certain obligations to the Federal Government. A careful comparison of the two acts clearly indicates the same primary purpose of furnishing electric power on a cooperative, non-profit basis by the corporations organized thereunder. It seems reasonable to assume that both acts were passed pursuant to the provisions of the federal "Rural Electrification

Act of 1936," (7 U. S. C. A., §§ 901-914), which authorized loans in the several states "for rural electrification and the furnishing of electrical energy to persons in rural areas who are not receiving central station service." Ark-La has borrowed from the Rural Electrification Administration under the provisions of this act and executed its mortgage to the federal agency in pursuance of the act's provisions.

Before Ark-La was authorized to do business in Arkansas, it filed with the Secretary of State its verified certificate together with its articles of incorporation. In this certificate, it sought authority to enter this state as "a non-profit corporation organized for the purpose of producing, transmitting, and selling electric power on a non-profit basis"; and it must be assumed that the authorization granted by the Secretary of State was responsive to the purpose thus expressed.

By § 25 of the Louisiana Act, cooperatives operating thereunder are exempt from the jurisdiction and control of the public service commission of that state. Section 31 of our Act 342 of 1937 provides: "All corporations organized under this Act shall be exempt in any and all respects from the jurisdiction and control of the Department of Public Utilities of this state, except said corporations shall secure from the Department of Public Utilities, before construction or operation is begun, a certificate of convenience and necessity for the construction or operation of any equipment or facilities for supplying electric service in rural areas." In the case of *Dept. of Public Utilities* v. *McConnell,* 198 Ark. 502, 130 S. W. 2d 9, this court held that the Department had no jurisdiction over cooperatives organized under Act 342, *supra,* and it was there said: "What we do decide is that the Department, by express language of the statute, is denied jurisdiction over the cooperatives in question other than a determination of whether public convenience and necessity will be served in the particular territory or area into which, or throughout which, the applicant proposes to operate."

After a careful consideration of the respective provisions of the two acts, and keeping in mind the common objects and purposes which both seem designed to achieve, it is our conclusion that Ark-La is a like corporation to an Arkansas cooperative created under Act 342 of 1937, within the meaning of § 11 of Art. XII of our constitution. When Ark-La established its business domicile in this state, it became entitled to rights, powers and privileges, the same as, but no greater than, electric cooperatives organized under Act 342 of 1937, except as to the specific constitutional restriction on the power to exercise the right of eminent domain. It is also subject to the same regulations which are imposed on a domestic electric cooperative organized under our statute and is, therefore, exempt from the control and jurisdiction of the Department, except that it must secure a certificate of convenience and necessity from the Department before beginning construction or operation of facilities for supplying service in rural areas.

However, despite its restricted powers while operating in this state, a company may, nevertheless, become a public utility by reason of the activities it actually pursues here. If Ark-La is, or has, actually engaged as a public utility, it cannot escape regulation by the Department merely because the charter powers it is permitted to exercise in this state may indicate a different status. There are numerous cases to the effect that it is what a company does that is the important thing, and not what it, or the state, says that it is. See *Inland Empire Rural Electrification, Inc.*, v. *Department of Public Service of Washington, et al.*, 199 Wash. 527, 92 P. 2d 258, and cases there cited. See, also, annotations, 132 A. L. R. 1495.

Section 1 (d) (1) of Act 324 of 1935 defines the term "public utility" to include "persons and corporations, or their lessees, trustees and receivers, now or hereafter owning or operating in this state, equipment or facilities for producing, generating, transmitting, delivering, or furnishing gas, electricity, steam, or other agency for the production of light, heat or power to, or for, the public

for compensation.'' The statute clearly gives the Department jurisdiction and control of those utilities which render service to or for the public for compensation.

The only service thus far performed by Ark-La in this state has been that rendered the Defense Plant Corporation under a certificate of convenience and necessity from the Department. This service was rendered for a year, or more, prior to the time the Defense Plant Corporation became a member of Ark-La. Appellees insist that this service is inconsistent with the idea that Ark-La is operating in this state as a rural electric cooperative for the reason that a cooperative under our act may serve members only, as customers. Conceding, without deciding, that the question whether a corporation is acting *ultra vires* is one properly to be determined by the Department, has the service rendered to the Defense Plant Corporation, under the circumstances disclosed in this record, resulted in fixing the status of Ark-La as that of a public utility? This service has been rendered pursuant to a private contract between the parties for the avowed purpose of relieving a power shortage created by the stress of war. It was rendered under a virtual directive of an agency of the federal government clothed with broad wartime powers and acting in a period of grave national emergency. While the service was rendered to a public body, Ark-La was under no obligation other than that imposed by its agreement to furnish the Defense Plant Corporation with electrical energy, and did not thereby hold itself out as willing to serve the public generally.

It is generally held that the furnishing of electric power to one customer under a private contract does not constitute the furnishing agency a public utility. *State ex rel. Buchanan County Power Transmission Co.* v. *Baker*, 320 Mo. 1146, 9 S. W. 2d 589; *Sunset Shingle Co.* v. *Northwest Electric Waterworks*, 118 Wash. 416, 203 Pac. 978; *Colorado Power Co.* v. *Halderman*, 295 Fed. 178. In the case of *Re Nevada Consolidated Copper Corporation*, 25 P. U. R. (N. S.) 319 (Ariz. 1938), the Arizona commission held that the copper company, furnishing

power to the United States Government temporarily to relieve a power shortage, was not doing a public utility business and was not, therefore, subject to regulation by the commission as a public utility. We concur in this view, and conclude that Ark-La has not dedicated its property to the use of the public by its contract and service to the Defense Plant Corporation.

The only other undertaking Ark-La has sought permission from the Department to perform is that of serving its five Arkansas rural cooperative members. An application for a certificate of convenience and necessity to construct and operate facilities for this service has thus far been denied, but without prejudice to the right to renew such application when Ark-La is in position to furnish the Department with more definite information concerning the proposal. Ark-La has not seen fit to renew this application. If, and when, a renewal of such application is made, it will be time enough to determine whether the facts and circumstances involved in such proposal would result in the determination of Ark-La's status as that of a public utility, and thus render it subject to jurisdiction and control of the Department. This question is, therefore, premature and not an issue here.

Appellees also argue that rural electric cooperatives organized under Act 342 of 1937 may not become members of Ark-La, and, in support of this contention, cite the following provision contained in § 12 of said act: "A corporation organized under this Act may become a member of another such corporation, and may avail itself fully of the facilities and services thereof." It is insisted that this provision of the act precludes a cooperative organized thereunder from becoming a member of a corporation organized under the law of another state. We think this provision of the statute must be considered in the light of the provisions of § 11, Art. XII of our constitution and the rights accorded like foreign corporations doing business in this state. In the case of *Patterson Orchard Co.* v. *Southwest Arkansas Utilities Corporation*, 179 Ark. 1029, 18 S. W. 2d 1028, 65 A. L. R. 1446, this court passed upon the question whether a foreign

corporation engaged as a public utility in this state had the right to exercise the power of eminent domain. It was there held that such corporation could not exercise this power by reason of the express constitutional restriction of § 11, *supra*. However, it was further held that such corporation might acquire right-of-way by lease, purchase, or other methods not excepted from the general powers granted under said constitutional provision. The above provision of § 12 of the act contains no express restriction against domestic cooperatives becoming members of other like corporations. Under the rule announced in the Patterson case, *supra*, cooperatives organized under Act 342, not expressly being denied the right to do so, may become members of a like foreign membership corporation entering this state to do business.

The record discloses that Ark-La entered into a contract with the Rural Electrification Administration under which the latter was obligated to advance Ark-La sufficient funds to enable it to construct facilities in a large number of Arkansas counties. It is insisted that the construction of such facilities could only be for the purpose of serving the public generally in the several counties, and that it is, therefore, Ark-La's purpose to establish an electric empire in competition with privately owned public utilities in this state. If Ark-La entertains the purpose of embarking upon such an ambitious program, that purpose has not been revealed in what it has already done, or declared its intention of doing, in this state. It has only rendered service to the Defense Plant Corporation. It has declared its intention to serve its own cooperative members, but, as yet, has failed to renew its application for the necessary authority from the Department to perform this service. We find nothing in its actions or declared intentions so far that indicates the purpose of making its services available to the public generally.

After careful consideration of the whole record, it is our conclusion that the operations and services of Ark-La thus far fail to bring it within the statutory definition of a public utility subject to the jurisdiction and control of

the Department. The judgment of the circuit court affirming the order of the Department of November 23, 1944, is accordingly reversed and the cause remanded with directions to dismiss the complaint of the utility appellees and vacate the order of the Department.

SMITH, J., dissents.